Gary John VAN OOTEGHEM,
Plaintiff-Appellee,

v.

Hartsell GRAY, et al.,
Defendants-Appellants.

Nos. 84–2343, 84–2653.

United States Court of Appeals,
Fifth Circuit.

Oct. 29, 1985.

Bickerstaff, Heath & Smiley, Steve Bickerstaff, Ann Clarke Snell, Larry Sauer, Austin, Tex., J. Patrick Wiseman, David Cunningham, Houston, Tex., for plaintiff-appellee.

Henry J. Voegtle, III, Dist. Attys. Office, Dallas, Tex., for amicus Wade.

Before GOLDBERG, JOLLY and HIGGINBOTHAM, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

We decide today that a Texas county is liable for the County Treasurer's unconstitutional firing of an employee of his office, but that the equitable remedy of reinstatement is not appropriate when a new County Treasurer with the right to appoint his own staff has subsequently been elected. We also conclude that plaintiff's counsel fees in this case were improperly calculated.

I

The facts giving rise to this protracted litigation, as set out in an *en banc* opinion of this court, are as follows:

In January 1975, plaintiff John Van Ooteghem was hired by defendant Hartsell Gray, the Treasurer of Harris County, Texas, to serve first as Cashier Assistant County Treasurer, and later as Assistant County Treasurer. He was a nontenured employee. Van Ooteghem performed his job in a professional manner; he was recognized to be both hard-working and quite brilliant. Accordingly, Treasurer Gray treated the plaintiff with the respect due to a professional: Van Ooteghem was allowed to set his own hours and to take time off as needed.

On July 28, 1975, Van Ooteghem informed Gray that he was a homosexual and, shortly thereafter, related his plans to address the Commissioners Court on the subject of the civil rights of homosexuals. On July 31, 1975, Gray forwarded a letter to Van Ooteghem which purported to restrict the latter to his office between the hours of eight a.m. and twelve noon and from one p.m. until five p.m.,

Mike Driscoll, Billy E. Lee, Co. Attys., Houston, Tex., for defendants-appellants.

Monday through Friday. These hours corresponded to the times during which citizens were allowed to address the Commissioners Court. The letter stated that its restrictions were intended to prevent Van Ooteghem from carrying on "political activities" during these hours. Van Ooteghem refused to sign an acknowledgement provided on the letter and his employment was terminated at the end of that day.

In response, Van Ooteghem filed suit, pursuant to 42 U.S.C. § 1983, alleging that he was dismissed as Assistant County Treasurer in violation of his constitutional right of free speech.

*Van Ooteghem v. Gray,* 654 F.2d 304, 305 (5th Cir.1981) (en banc), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1255, 71 L.Ed.2d 447 (1982).

The case was tried on stipulated facts. The district court found that Van Ooteghem's desire to speak before the Commissioner's Court "precipitated his discharge." Because such speech was "constitutionally protected" and "could not have substantially impeded the functioning of the Treasury," the court held that Gray's imposition of "strict working hours" violated Van Ooteghem's first amendment rights. The district court rendered judgment against Gray "in his official capacity only" and ordered Van Ooteghem reinstated. The court also awarded Van Ooteghem back pay and $7,500 in attorney's fees, to be paid by Gray "in his official capacity from the Departmental Budget of the County Treasurer's Office."

A panel of this court affirmed the district court, holding that Gray's dismissal of Van Ooteghem violated plaintiff's first amendment right to free speech and "clearly represented 'official policy' for which Harris County may be held liable." *Van Ooteghem v. Gray,* 628 F.2d 488, 495 (5th Cir. 1980). The panel vacated the award of attorney's fees, however, for a redetermination according to the guidelines of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). *Van Ooteghem,* 628 F.2d at 496–97.

On rehearing, the *en banc* court did not decide whether "government regulation of constitutionally protected speech of public employees [must] be justified by a compelling state interest," *Van Ooteghem,* 654 F.2d at 304, holding instead that "[u]nder any standard that could be applied" Van Ooteghem's constitutional right of freedom of speech was violated, *id.* at 306. The *en banc* court remanded the case to the district court, however, to reconsider four issues that had not yet been adequately resolved: (1) whether Texas counties are local governmental units unprotected by the eleventh amendment; (2) whether Harris County could be sued as a "person" under 42 U.S.C. § 1983; (3) whether Gray's action in dismissing Van Ooteghem was taken "pursuant to official policy of the county such as would render the county government liable for back pay and attorneys' fees if it was a 'person' under *Monell* and did not enjoy eleventh amendment protection"; and (4) for *Johnson* findings in support of its award of attorney's fees. *Id.*

On remand, the district court, 584 F.Supp. 897, granted Van Ooteghem's motion for summary judgment. Applying its previous findings, the court held that Harris County was not an agency of the State of Texas entitled to eleventh amendment immunity, and was a "person" under § 1983. Because Gray was an *elected official* whose authority in personnel decisions was final, the district court held, his "action must necessarily be considered to represent official policy" subjecting the county itself to monetary liability. The court engaged in a *Johnson* analysis and again awarded Van Ooteghem $7,500 in attorneys' fees. Van Ooteghem then filed a supplemental application for attorney's fees. The court, after a hearing, computed new fees for services rendered after the period of time covered by the $7,500, enhanced that award by 100%, added $3,436.59 for out-of-pocket expenses, and awarded $5,026.08 "as interest on the originally awarded fee of $7,500.00," rendering defendants liable for $89,912.67 in attor-

ney's fees. Hartsell Gray and Harris County appeal.

## II

■ Several Texas Counties, in an admirably researched *amicus curiae* brief by Prof. Crump of the University of Houston Law School, argue that Texas counties are arms of the State entitled to eleventh amendment immunity. This issue, however, has recently been otherwise resolved by this court. In *Crane v. State of Texas*, 759 F.2d 412 (5th Cir.), *on rehearing*, 766 F.2d 193 (5th Cir.1985), the court held that "Texas counties are not mere arms or agents of the state; they are independent units of local government to which the immunity granted by the Eleventh Amendment does not apply." 759 F.2d at 420. As such, the panel concluded, Dallas County was a "person" within the meaning of 42 U.S.C. § 1983, as determined by *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Id.* at 421. In the case at bar, Harris County was therefore subject to suit in federal court under § 1983.

## III

■ Appellants argue that "Harris County has not been made a party to this suit, so due process will not permit recovery of penal funds from tax money that belongs to Harris County." This contention is without merit and was previously rejected by the original panel of this court. *Van Ooteghem*, 628 F.2d at 495. Gray was sued in his official capacity as County Treasurer. In *Monell*, the Supreme Court held that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." 436 U.S. at 690 n. 55, 98 S.Ct. at 2035 n. 55. This holding was reaffirmed in *Kentucky Bureau of State Police v. Graham*, —— U.S. ——, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985), where the Court held that "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as

a suit against the entity." Hartsell Gray has been represented by a county attorney since the beginning of this lawsuit. The county, thus, had notice of the suit against it.

## IV

■ Appellants next assert that Gray had good cause to terminate his assistant "for refusing to agree to work at his assigned work area at the assigned work hours." The district court, however, found "that the imposition of such working hours was aimed at preventing the Plaintiff from addressing the Commissioners Court." The *en banc* court held this finding "not clearly erroneous" and "compelled by the stipulated facts." 654 F.2d at 305. We cannot review again the conclusion that Van Ooteghem's dismissal was unconstitutional "[u]nder any standard that could be applied." *Id.* at 306.

## V

■ Appellants also argue that under Texas law, Van Ooteghem's term of employment ended with that of the County Treasurer who hired him and that because Gray's term ended on December 31, 1978 and a successor is now in office, it is inequitable or unjust to order Van Ooteghem reinstated as Assistant Treasurer. Though Van Ooteghem was a nontenured employee and could have been fired at will for *no* reason whatsoever, *see* Tex.Rev.Civ.Stat. Ann. art. 2372h(1) (Vernon 1971), no public employee can be discharged for an unconstitutional reason. *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Reinstatement is ordinarily "an integral part of the remedy for a discharge which contravenes the First Amendment." *Bueno v. City of Donna*, 714 F.2d 484, 495 (5th Cir.1983).

■ The difficulty here is that the original judgment was rendered before Gray's term expired, and the court's order was directed to Hartsell Gray *and to his successors*. Although, as we will explain, the wrong is chargeable to the county, a new County Treasurer has been elected and he

has the right to employ persons of his own choice. At the same time, Van Ooteghem is entitled to be considered for employment free of any prejudice stemming from his earlier termination. In an effort to accommodate these competing interests, we modify the district court's order to delete any affirmative duty of reinstatement. Should Van Ooteghem be rejected for employment by the new County Treasurer and be persuaded that the rejection was caused by the original exercise of his first amendment rights, or other impermissible reasons, he will be free to pursue that claim.

## VI

The *amici* argue that Harris County is not liable for Gray's constitutional tort because Van Ooteghem's dismissal "was a single, isolated incident, arising from personal motivations, and not the implementation or execution of a formal county policy...." Under *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984) (en banc) (denying reh'g (with opinion)), *cert. denied,* — U.S. —, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985) (*"Bennett II"*), a local government is liable under § 1983 for a deprivation of constitutional rights only if that deprivation is "inflicted pursuant to official policy." *See also Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

The district court held that Gray's action necessarily represented official policy because, as County Treasurer, he was elected directly by the people "to set governmental policies in particular areas," and his authority was not "connected to a council or other governing body." Both the lower court and the original panel relied on *Familias Unidas v. Briscoe,* 619 F.2d 391 (5th Cir. 1980), in holding that the county Treasurer's dismissal of Van Ooteghem constituted official county policy. In *Familias,* the court considered a Texas county's liability under § 1983 for the actions of a county judge. Because the county judge's actions in that case were confined to implementing a state statute, however, in contrast to "his traditional role in the administration of county government or to the discretionary powers delegated to him by state statute in aid of that role," *id.* at 404, the court held that the judge was effectuating state not county policy. The county was thus exonerated from § 1983 liability. *Id.* at 404–5. In *Bennett II,* the *en banc* court rejected the line of authority

> which would permit policy or custom to be attributed to the city itself by attribution to any and all city officers endowed with final or supervisory power or authority. Only those policymakers defined in part 4 [of the *Bennett* opinion] may, by their declaration of formal policy or accession to custom, subject the city to liability in the absence of such declaration or accession by the governing body itself.

*Bennett II,* 735 F.2d at 862. City or county policymakers

> not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals. Policymakers act in the place of the governing body in the area of their responsibility; they are not supervised except as to the totality of their performance.... The governing body must expressly or impliedly acknowledge that the agent or board acts in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility, subject only to the power of the governing body to control finances and to discharge or curtail the authority of the agent or board.

*Bennett v. City of Slidell,* 728 F.2d 762, 769 (5th Cir.1984) (en banc), *cert. denied,* — U.S. —, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985) (*"Bennett I"*). The *en banc* court in *Bennett II,* however, expressly affirmed the writing in *Familias* "as it relates to the officer who obtains policymaking authority by virtue of the office to which that officer is elected." *Bennett II,* 735 F.2d at 862. *See also Bennett I,* 728 F.2d at 766 n. 2 (*Familias* did not deal with the problem of "ascertaining whether an officer of a local government has received from the governing body the authority to

make policy for the local government"). But in *Crane v. State of Texas,* 759 F.2d 412 (5th Cir.1985), we concluded that the district attorney of Dallas County was making county policy in his enforcement of state law.

■ The first issue is whether Gray's actions in firing Van Ooteghem are more properly characterized as the effectuation of the policy of the State of Texas or as an effectuation of discretionary local duties in the administration of county government. We are persuaded that the County Treasurer's decisions regarding termination of Van Ooteghem fall on the local not the state side of his duty: he was about the business of county government. We therefore need not attempt to resolve any conflict between *Familias* and *Crane.*

The treasurer is elected by county voters, TEX.CONST. art. 16 § 44; Tex.Rev. Civ.Stat.Ann. art. 1703 (Vernon 1962), although the position was originally by appointment of the County Commissioners Court, *see* Interpretive Commentary to TEX.CONST. art. 16 § 44 (Vernon 1955). Further:

> The chief functions of the County Treasurer are to receive county funds and disburse them as directed by the County Commissioners' Court. He also examines the books of all county officers who received any money.

*Id.* On election, the treasurer must post a bond to secure performance of his duty. Unlike a county sheriff's, the treasurer's bond is payable to the county judge, rather than to the Governor. *Compare* Tex.Rev. Civ.Stat.Ann. art. 1704 (Vernon 1962), *with id.* art. 6866 (Vernon 1960). Indeed, the bond premium is paid from the county general fund. *Id.* art. 1704–A (Vernon 1962). Vacancies are filled by appointment by the Commissioners' Court. *See id.* art. 1707. The statutory description of the County Treasurer's duties is:

> The County treasurer, as chief custodian of county finance, shall *receive all moneys belonging to the county* from whatever source they may be derived; keep and account for the same in a designated

depository or depositories; and *pay and apply or disburse the same, in such manner as the Commissioners Court may require or direct,* not inconsistent with constituted law. *Said court may provide funds for adequate personnel* and proper media that would enable the treasurer to perform such constituted duties.

*Id.* art. 1709 (emphasis added); *see also id.* art. 1709a. The treasurer's responsibility includes the keeping of an account for county receipts and expenditures as well as its debts. That task includes the rendering of "a detailed report" to the Commissioners' Court. *Id.* art. 1711. Texas law establishes state liability for its officers who have deprived any persons "of a right, privilege, or immunity secured by the constitution or laws of ... the United States." *Id.* art. 6252–26, § 1(a)(2) (Vernon 1970). This provision omits the County Treasurer, or any other county official, from coverage since the county is not an "agency, institution, or department of the state." *Id.* § 1(a). In Texas, certain officials are entitled to the advice and representation of the Attorney General. The County Treasurer is not included, presumably because the state has its own treasurer. *See id.* arts. 4399, 4412b (Vernon 1976).

Under this statutory arrangement, it is difficult to conclude that personnel decisions of a County Treasurer are chargeable to the state. Whatever state duties a County Treasurer may have, we are persuaded that in the personnel matters at issue here, Gray was wearing his county hat.

■ Having concluded that the County Treasurer was acting as a county official in his decision to terminate Van Ooteghem, we turn to the question of whether that decision effectuated "policy" or was merely an episodic event. We discuss but pretermit this issue in *Rhode v. Denson,* 776 F.2d 107 (5th Cir.1985). Whatever be the proper characterization of Constable Denson's venture in that case, Hartsell Gray's decision as County Treasurer appears to have reflected a policy choice. The news release prepared

by Gray on termination of Van Ooteghem announced, in part, that "appointed personnel are not allowed to engage in political activities during business hours." Thus, while the termination of Van Ooteghem was a discrete event, it was the product of the County Treasurer's announced policy regarding the political rights of all his employees. Gray defined a general objective and set the means of achieving it. His explanation for the decision spoke in terms that swept more broadly than Van Ooteghem's case. That the Van Ooteghem situation was the precipitating event is not dispositive; the critical fact is that Gray's response to that situation was to adopt a rule that sought to control all such situations in the future. The fact that Gray purported to announce a general policy would not have precluded the trial court from finding either that this announcement was a pretext designed to cover an essentially episodic tort or that there was no causal relationship between the policy and the tortious act. But in this case the district court did not so find. Van Ooteghem was fired when he refused to abide the announced policy.

## VII

Finally, Appellants argue that the district court made two errors in calculating the award of plaintiff's attorneys' fees. We conclude that the 100% enhancement of fees was improper but that the award of interest on the original $7500 award was appropriate.

The record shows that when calculating the attorneys' fee award for services rendered after October 16, 1978, in light of plaintiff's affidavits and itemizations and the twelve *Johnson* factors (*see Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974)), the trial judge found that all the fees requested by the plaintiff were justified. The judge concluded that a rate of $150.00 per hour was reasonable and customary "for attorneys with like experience, reputation and ability to handle a case such as this"; the judge expressly adverted here to *Johnson* factors (5), (6) and (9). After completing the *Johnson* analysis, the judge enhanced the award by 100% to compensate for "the potential risks to Plaintiff in not prevailing." Such risks, however, should already have been accounted for in *Johnson* factor (6), which allows adjustment for the kind of contingent fee arrangement that was present in this case. *See Johnson*, 488 F.2d at 718.

■ We are acutely aware of the impossibility of "reduc[ing] the calculation of a reasonable fee to mathematical precision," *Johnson*, 488 F.2d at 720, especially when we are dealing with an effort to decide, after a plaintiff has prevailed on the merits, how much compensation his attorney should receive for having run the risk of not succeeding at all. We are also reluctant to interfere with a district court's call of reasonableness. But having said that, and in light of our own intimate familiarity with this protracted litigation, we are left with the firm conviction that $300.00 per hour is excessive compensation for the services rendered in this case. That lions at the bar may command such fees is not the measure. The standard is fair compensation, and a rate of $150.00 per hour is quite sufficient to compensate the plaintiff's attorneys for the services they rendered and the risks that they undertook in accepting this case.

■ The district court also awarded the plaintiff $5,026.08 interest on the originally awarded fee of $7500.00 (which was for fees through October 16, 1978). Unlike the new fee award, which, at the $150.00 hourly rate, already incorporated an adjustment for inflation and delay in receipt of payment, the $7,500.00 was evidently calculated on the basis of rates that were customary in the 1970's. *See Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1096 n. 26 (5th Cir.1982). The award of interest was therefore proper.

The proper fee award totals $49,187.67 ($40,725.00 for attorneys' fees, $5,026.08 interest, and $3,436.59 out-of-pocket expenses). As noted earlier, we also modify the district court's order to delete any af-

 

firmative requirement that Van Ooteghem be reinstated.

AFFIRMED AS MODIFIED.