Calvin Lewis OWENS, Jr., Plaintiff,

v.

FULTON COUNTY, Defendant.

No. 1:87–CV–1442–RHH.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 15, 1988.

Ralph S. Goldberg, Atlanta, Ga., Robert Wayne Caplan, Avondale, Ga., for plaintiff.

Susan Barker Forsling, Young & Murphy, Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983 alleging defendant violated his Sixth and Fourteenth Amendment rights. The action is currently before the court on defendant's motion for summary judgment. For the reasons stated below, the court GRANTS the motion.

## FACTS

The following facts are not in dispute. On February 18, 1984, one Carlos Lowery Young, Jr. was shot and killed. At some time thereafter, plaintiff was arrested and charged with the murder. Plaintiff's Complaint, ¶¶ 7–8. On or about May 8, 1984, the Fulton County Grand Jury indicted plaintiff for murder and armed robbery. Statement of Material Facts as to Which Defendant Contends There is no Genuine Issue to be Tried, ¶ 1 ("Defendant's Facts"). A jury in the Superior Court of Fulton County convicted plaintiff of felony murder and armed robbery on October 5, 1984. Id., ¶ 2. Approximately five days after plaintiff was sentenced, the Atlanta Police determined that others had committed the crime for which plaintiff had been convicted. Plaintiff's Complaint, ¶ 9. Based on the evidence that someone else may have committed the murder, on or about October 18, 1984, the District Attorney for the Atlanta Judicial Circuit, Lewis Slaton, requested, and the court granted, plaintiff's release from incarceration on a signature bond. Defendant's Facts, ¶ 3.

On January 7, 1985, Tonya Wilkes pleaded guilty to the felony murder of Carlos Lowery Young, Jr. and was sentenced. Complaint ¶ 13. On January 11, 1985, plaintiff filed a motion for a new trial and on February 21, 1985, the Superior Court granted the unopposed motion. Id., ¶ 14; Defendant's Facts, ¶ 4. On March 20, 1985 plaintiff moved the Superior Court for an acquittal and dismissal of the indictment or in the alternative for an order requiring the State to enter a nolle prosequi in the case. Defendant's Facts, ¶ 5. In response to the plaintiff's March 20, 1985 motion, the Assistant District Attorney for the Atlanta Judicial Circuit moved to have the case dead-docketed. Id., ¶ 6. On June 11, 1985 the Superior Court denied plaintiff's motion for an acquittal and/or dismissal of the indictment, denied the District Attorney's motion to dead-docket the case and returned the case to the active trial calendar. Id., ¶ 7.

On August 13, 1985, the plaintiff again moved the Superior Court for an acquittal,

this time on the grounds that both his Sixth Amendment right to a speedy trial and his rights under the Georgia Speedy Trial Act had been violated. On the same date, the District Attorney again moved to dead-docket the case. *Id.,* ¶ 8. The court heard oral arguments on both motions and announced in open court that it would grant the plaintiff's motion for an acquittal on the ground of the Speedy Trial Act and deny the District Attorney's motion to dead-docket the case. The Superior Court entered a written order granting plaintiff's motion for an acquittal on August 23, 1985. *Id.,* ¶¶ 9–10.

Plaintiff contends that the actions of the District Attorney ("Slaton") in refusing to enter a nolle prosequi in the case against him after Tonya Wilkes had pleaded guilty and been sentenced to the crime, in twice moving instead to dead-docket the case, and in allowing plaintiff's' demand for speedy trial to expire without trying him, constitute violations of his Sixth Amendment right to a speedy trial and his Fourteenth Amendment right not to be deprived of his liberty without due process. He further contends that Slaton, when making prosecutorial decisions such as those enumerated above, acts as the final policymaker for Fulton County and therefore the County may be held liable for his actions under 42 U.S.C. § 1983. In its motion for summary judgment, the defendant argues that Slaton acts as an official of the State of Georgia rather than the County when he makes and carries out prosecutorial decisions.

Defendant moves for summary judgment in its favor on the ground that it cannot be held liable under § 1983 for acts of the District Attorney whom it contends is not a policymaker for the County. Defendant also moves for summary judgment on the grounds that plaintiff allegedly has not suffered a violation of either his Sixth or fourteenth Amendment rights and allegedly is not entitled to damages. Because the court determines below that under Georgia law the district attorney is a state rather than a county official and therefore grants the defendant's motion on that ground, the court declines to address the other grounds set forth by defendant in its brief in support of its motion for summary judgment.

DISCUSSION

The law is well established that a county or other local government may not be sued under § 1983 solely on a theory of *respondeat superior. Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037. Plaintiff does not suggest that Fulton County lawmakers have enacted laws establishing prosecutorial policies to dead-docket cases or to refuse either to enter a nolle prosequi or try an accused before the speedy trial time expires. Rather, plaintiff contends that the district attorney, in making such prosecutorial decisions, carries out edicts or acts which may fairly be said to represent official policy of the county.

The question before this court, therefore, is whether under Georgia law a district attorney is an official policymaker or final decisionmaker for the county. In the majority of the cases cited by both defendant and plaintiff, the courts did not address the issue of whether the civil rights defendant was a county official. Instead, the courts characterized the actor who allegedly violated the plaintiff's civil rights as a county or local government official and then analyzed the question whether that official's actions could create municipal liability under § 1983. In the two recent Supreme Court cases cited by both defendant and plaintiff to support opposing positions in this case, the Court considered the question whether a single deprivation of a plaintiff's civil rights by a municipal official could support a finding of municipal liability under § 1983.

In *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), cited by plaintiff, the Court conclud-

ed that a municipality may be held liable under § 1983 "where action is directed by those who establish governmental policy ... whether that action is to be taken only once or to be taken repeatedly." *Id.* at 481, 106 S.Ct. at 1299. Although the county argued before the Supreme Court in *Pembaur* that the prosecutor lacked authority to establish municipal policy respecting law enforcement practices, the Court did not address that issue because the lower court had found, based upon its examination of state law, that the prosecutor was a county official authorized to establish the official policy of the county and the Court declined to question that finding. *See Id.* at 484, 106 S.Ct. at 1300.[1]

The defendant cites a more recent Supreme Court decision to support its argument that a district attorney in Georgia is not an official of the county. As in *Pembaur,* however, the Supreme Court in *City of St. Louis v. Praprotnik,* —— U.S. ——, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), only addressed the question whether the city could be liable under § 1983 for the allegedly unconstitutional actions of certain city officials. In a plurality opinion, the *Praprotnik* Court held that the city could not be held liable where, under state law, the city officials sued did not have the authority to make *final* municipal policy. The Court in *Praprotnik* did not consider whether the city employees who allegedly violated plaintiff's constitutional rights were officials of the city as opposed to another municipal entity. Rather, the Court analyzed whether the city officials involved held "final policymaking authori-

ty" which could expose the city to § 1983 liability.

Neither *Pembaur* nor *Praprotnik* is directly on point with the instant case where, before considering whether the district attorney is a final policymaker, this court must first determine whether the district attorney is an official of the county or the state. Even if the district attorney establishes final policy with respect to the allegedly unconstitutional practices at issue in this action, the county may not be held liable under § 1983 if the district attorney is the ultimate decisionmaker for the *state* rather than the county. Although the Supreme Court cases cited above do not directly address the issue before this court, they do provide guidance for resolving the question at hand. In both *Pembaur* and *Praprotnik* a plurality of the Court specified that a district court should look to state law to identify policymaking officials of different governmental entities.[2] In *Praprotnik* the Court stated "the identification of policymaking officials is not a question of federal law and it is not a question of fact in the usual sense." —— U.S. at ——, 108 S.Ct. at 924. Rather, a court must evaluate state law and determine as a legal matter whether a person who allegedly violated another's constitutional rights acted as the final policymaker for the entity being sued.[3]

In the case cited and relied on by plaintiff to support his argument that Slaton is the final policymaker for Fulton County, the Fifth Circuit correctly conducted an inquiry into state law. On rehearing in *Crane v. State of Texas,* 766 F.2d 193 (5th Cir.), *cert. denied,* 474 U.S. 1020, 106 S.Ct.

---

**1.** Plaintiff suggests that the District Attorney's actions in the present case must be construed to be policy of the County because the Supreme Court in *Pembaur* concluded that the prosecutor in that action was a final decisionmaker for the county. The *Pembaur* conclusion in that regard has no bearing on the instant action because the Supreme Court merely adopted a factual finding of the lower court that, under *Ohio* law, the prosecutor could establish county policy under appropriate circumstances. .

**2.** In *Pembaur* only four justices joined part II–B of the opinion in which Justice Brennan wrote "whether an official had final policymaking au-

thority is a question of state law." 475 U.S. at 483, 106 S.Ct. at 1300. The *Praprotnik* plurality reiterated "that the identification of policymaking officials is a question of state law." —— U.S. at ——, 108 S.Ct. at 924.

**3.** The *Praprotnik* Court rejected the suggestion "that a jury should be entitled to define for itself which officials' decisions should expose a municipality to liability." *Id.* at —— U.S. at ——, 108 S.Ct. at 926. Thus, the determination of a policymaking official for purposes of § 1983 municipal liability appears to rest with the court.

570, 88 L.Ed.2d 555 (1985), the county argued, as does defendant here, that the district attorney was a state official and that it could not be held liable for the policies he set. The *Crane* court looked to Texas law and found that, although the Texas District Attorney "has numerous, if relatively minor, attributes of a State official, ... [o]ther and more significant factors, generally speaking, argue that he is a local official." *Id.* at 194. Under Texas law, the court noted, the district attorney is paid by county funds, although the funds are partly reimbursed by the state; he is elected by the voters of his district which, except in all but a few cases, corresponds to a single county; and he exercises his major powers and duties alone and without responsibility to the State Attorney General, who under Texas law has no general prosecutorial powers.[4] The *Crane* court concluded that the Texas district attorney is properly viewed as a county official, "limited in the exercise of [his] powers to the county, filled by its voters, and paid for with its funds." *Id.* at 195.

The holding of the Fifth Circuit that the district attorney is a local county official would be persuasive if Georgia law mirrored Texas law. After a thorough examination of Georgia law, however, this court concludes that the Georgia district attorney is a state, rather than county, official. Unlike in Texas, the salary of the district attorney in Georgia is paid by state funds, although the county or counties comprising the D.A.'s judicial circuit may supplement the salary. Ga. Off'l Code Ann. § 15–18–10 (1982). Also contrary to Texas law, the majority of the judicial circuits over which the Georgia district attorney has authority are comprised of more than one county, usually three or more. *Id.*, § 15–6–1 (11 circuits with only one county, 34 circuits with two or more counties). A third difference in the two state's laws is that the State of Georgia, through its attorney general, *does* have general prosecutorial powers and when a criminal case is removed to federal court the district attorney, in association with the Attorney General, must appear for the state to prosecute. *Id.*, § 15–18–7.

In addition to these differences in state law, the Georgia district attorney generally has more attributes of a state official than of a county official. The only county attributes the court gleaned from Georgia law are that the county may supplement the salaries of the district attorney and his or her secretary; while generally the D.A.'s secretary is hired and paid through the state, the D.A. may alternatively hire a secretary to be an employee of the county or counties of the judicial circuit; the county or counties which make up the judicial circuit provide the district attorney's office and materials; and all payments formerly allowed district attorneys must be turned over to the county in which the district attorney's services were rendered. *Id.* §§ 15–18–10, 15–18–11, 15–18–18, 15–18–19, 15–18–23.[5]

The district attorney's state attributes, in addition to receiving a salary from the state and representing judicial circuits that more often than not include more than one county, include prosecuting the state's interests in the Superior Court; collecting money due the state and reporting to the state revenue commissioner; receiving reimbursement for expenses from the state in the same manner as other state officials; and, as noted above, sharing prosecutorial authority with the State Attorney General. *Id.*, §§ 15–18–6, 15–18–7, 15–18–10, 15–18–

---

**4.** In considering whether a county could be held liable for the acts of a sheriff, the Eleventh Circuit also evaluated state law. In *Lucas v. O'Loughlin,* 831 F.2d 232 (11th Cir.1987), the Eleventh Circuit concluded that the act of a Florida sheriff was the act of the county where the sheriff's salary was paid by local taxation and according to a budget approved by the county commissioners and where the sheriff was elected to serve the county as sheriff, even though elected by virtue of state law. *Id.* at 235.

**5.** Georgia law also provides that a district attorney may employ additional assistants and staff as provided for by local law or as authorized by the county or counties comprising the judicial circuit. The law specifies that any person so employed by the district attorney shall be compensated by the county or counties comprising the judicial circuit. Ga. Off'l Code Ann. § 15–18–20 (1982).

12. Additionally, under Georgia law a district attorney of one judicial circuit may appear and assist a district attorney from another judicial circuit even though the latter is not indisposed. *Hannah v. State*, 212 Ga. 313, 315, 92 S.E.2d 89 (1956). Similarly, if a district attorney is indisposed, the Governor of Georgia may be called upon to provide the services of the Attorney General. Ga. Off'l Code Ann. § 15–18–5 (1982).[6]

Given the district attorney's relatively minor attributes of a county official and his or her more numerous and more significant state attributes, the court finds that under Georgia law the district attorney is a state, rather than a county, official. In the instant case, therefore, even if the court assumes *arguendo* that Slaton acted as the final policymaker in making prosecutorial decisions injurious to plaintiff, he acted as a state official and did not create county policy. Therefore, Fulton County cannot be held liable for Slaton's allegedly unconstitutional decisions to move to dead-docket plaintiff's case and to refuse to nolle prosequi the charges or retry plaintiff prior to the expiration of the speedy trial deadline. Accordingly, the court GRANTS defendant Fulton County's motion for summary judgment and hereby TERMINATES this action.

So ORDERED.

---

**6.** Georgia law, in addition to establishing superior courts and district attorneys whose judicial districts cross county boundaries, creates state courts of the counties and magistrates courts whose districts correspond to a single county. The judges of both courts are paid by the county. Ga. Off'l Code Ann. §§ 15–7–22, 15–10–23. A solicitor, who is likewise paid by the county, prosecutes before the state courts of the counties and a county attorney prosecutes before the magistrates court. *Id.*, §§ 15–7–24, 15–10–66. The county attorney has no authority to represent the state in criminal proceedings. *Westbrook v. Zant*, 575 F.Supp. 186 (M.D.Ga.1983), *rev'd other grounds*, 743 F.2d 764 (11th Cir. 1984).