**Calvin Lewis OWENS, Jr.,
Plaintiff–Appellant,**

v.

**FULTON COUNTY, Defendant–Appellee.**

No. 88–8512.

United States Court of Appeals,
Eleventh Circuit.

July 20, 1989.

Robert W. Caplan, Avondale, Ga., Ralph Goldberg, Atlanta, Ga., for plaintiff-appellant.

Susan B. Forsling, Fulton County Office of Staff Counsel, Atlanta, Ga., for defendant-appellee.

Before KRAVITCH and CLARK, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

Carlos Lowery Young, Jr. was robbed and killed on February 18, 1984. The plaintiff-appellant, Calvin Lewis Owens, Jr. was mistakenly identified as one of Young's black assailants and indicted by the Fulton County Grand Jury on charges of murder and armed robbery. In October, 1984, Owens was convicted in Fulton County Superior Court of felony murder and sentenced to life imprisonment. Soon after he and his alleged accomplice were sentenced, however, the Atlanta police received a tip that a black woman had been overheard in a bar bragging about having murdered a white man in midtown Atlanta. The police reopened their investigation and subsequently arrested Tonya Wilkes and two other females in connection with the crime for which Owens had been convicted. Wilkes later gave a full confession and in January, 1985, pleaded guilty to felony murder. Owens, meanwhile, was released from incarceration on a signature bond. In February, 1985, the Fulton County Superior Court granted Owens' unopposed motion for a new trial. A month later, the appellant moved for an acquittal and dismissal of the indictment or alternatively for an order requiring the State to enter a nolle prosequi in the case. The district attorney

for the Atlanta Judicial Circuit, Lewis Slaton, opposed the motion and sought by separate motion to place the case on the court's "dead docket."[1] In June, 1985 the court denied both parties' motions and returned the case to the active docket.

Owens moved again for an acquittal in August, 1985, arguing that his right to a speedy trial under the Sixth Amendment and the Georgia Speedy Trial Act had been violated, and the district attorney once more attempted to transfer the case to the dead docket. On August 23, 1985 the Superior Court judge entered an order granting the appellant's motion for acquittal under the Speedy Trial Act.

Owens now seeks to hold the defendant-appellee, Fulton County, liable under 42 U.S.C. § 1983. The gravamen of his complaint is that the county, through the actions of the district attorney, violated his Sixth Amendment right to a speedy trial and his Fourteenth Amendment right not to be deprived of liberty without due process. The United States District Court for the Northern District of Georgia granted the defendant's motion for summary judgment and dismissed the complaint in June 1988 on the grounds that the district attorney was a state rather than a county official and therefore the county could not be subject to a § 1983 action. *Owens v. Fulton County*, 690 F.Supp. 1024 (N.D.Ga. 1988). We affirm.

42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities se-

cured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

In *Monell v. Department of Social Services of New York*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611, 635 (1978), the United States Supreme Court established that municipalities and other local bodies could be treated as "persons" for purposes of a § 1983 action who could be sued directly for constitutional violations caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officials." *Monell*, however, rejected liability based on a respondeat superior theory, instead limiting recovery to instances in which "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694, 98 S.Ct. at 2037–38, 56 L.Ed.2d at 638. Owens does not contend that Slaton acted directly according to county prosecutorial policy dealing with the dead-docketing of cases, refusal to enter a nolle prosequi in a case, or allowing expiration of a speedy trial demand. Instead, he alleges that the district attorney's actions constitute edicts or acts which may fairly be said to represent official Fulton County policy. Thus, the determinative issue is whether Slaton, in making prosecutorial decisions concerning the charges against Owens, was acting as a final policymaker for the county, in which case § 1983 liability would attach, or for the state, which would preclude this action.[2]

Municipal liability under § 1983 is incurred only where "a deliberate choice to follow a course of action is made from

---

1. A "dead-docketed" case is one that is removed from the active trial calendar and transferred to inactive status. The indictment, however, remains viable and the charges may be reactivated at any time. Apparently, the district attorney still maintained some reservations about Owens' innocence and sought to keep the charges against him pending in the event that Wilkes nullified her confession or retracted her guilty plea.

2. The Eleventh Amendment bars private actions for damages against a state in federal court. However, "[l]ocal governments, to the extent that they are discrete corporate entities and not merely agents of the state under state law, are not considered part of the state for purposes of Eleventh Amendment analysis." *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 n. 13 (5th Cir.1980) (citing *Monell, supra,* 436 U.S. at 690 n. 54, 98 S.Ct. at 2035 n. 54, 56 L.Ed.2d at 635 n. 54).

among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452, 465 (1986). Consequently, only those officials having "final policy-making authority" may be sued under the statute. *City of St. Louis v. Praprotnik,* 485 U.S. 112, ——, 108 S.Ct. 915, 924, 99 L.Ed.2d 107, 118 (1988). The district court assumed *arguendo* that the district attorney was a final decisionmaker for purposes of § 1983, but correctly noted that the threshold determination in this case was whether Slaton enunciated policy on behalf of the county or the state. 690 F.Supp. at 1026, 1028.

■ *Pembaur* and *Praprotnik* both make clear that whether a particular official has final policymaking authority for § 1983 purposes is a matter of state law. *Praprotnik,* 108 S.Ct. at 924; *Pembaur,* 475 U.S. at 483, 106 S.Ct. at 1300. Implicit in these decisions is the corollary proposition that whether an official acts on behalf of the county or the state is similarly a question of state law.[3] The Eleventh Circuit Court of Appeals has consistently followed such an approach. *See, e.g., Lucas v. O'Loughlin,* 831 F.2d 232 (11th Cir.1987) (deciding whether, under Florida law, sheriff acted for the county), *cert. denied sub nom., St. Johns County, Florida v. Lucas,* —— U.S. ——, 108 S.Ct. 1595, 99 L.Ed.2d 909 (1988); *Familias Unidas v. Briscoe,* 619 F.2d 391 (5th Cir.1980) (evaluation of Texas law to determine whether judge's issuance of statutory disclosure demands represented official county policy).[4] Furthermore, we reject the appellant's argument that this issue requires a jury determination. The *Praprotnik* Court noted that "the identification of policymaking officials ... is not a question of fact in the usual sense" and thus not a suitable matter

for the jury to decide. 485 U.S. at ——, 108 S.Ct. at 924–25, 99 L.Ed.2d at 118–19.

The courts traditionally have employed a functional analysis in deciding whether a particular individual is a policymaker for the county. The practical test articulated in *Familias Unidas, supra,* is whether the decisionmaker, by virtue of his official conduct, serves as the "final authority or ultimate repository of county power." 619 F.2d at 404. Thus, in *Lucas v. O'Loughlin, supra,* this court held a county liable for an employment decision made by a Florida sheriff who had "absolute authority" over his deputies. 831 F.2d at 235. *See also Van Ooteghem v. Gray,* 774 F.2d 1332, 1337 (5th Cir.1985) (in § 1983 action stemming from county treasurer's dismissal of employee, determinative question was whether the conduct involved was "more properly characterized as the effectuation of the policy of the State ... or an effectuation of discretionary local duties in the administration of county government"). In our most recent treatment of the issue, we held that a county could be held accountable for a sheriff's negligent hiring of the chief jailer, despite his technical status as a state official under Alabama law. *See Parker v. Williams,* 862 F.2d 1471 (11th Cir.1989). The pivotal issue was not whether the sheriff was considered an employee of the state, but whether, in his capacity to hire and train the jailer, he was acting as the final repository of county authority. *Id.* at 1478.

■ Whether, under Georgia law, a district attorney sets policy for the county or for the state, presents a question of first impression in this court. Our sister circuit has twice passed on the issue with respect to Louisiana law in *Mairena v. Foti,* 816 F.2d 1061 (5th Cir.1987), *cert. denied sub nom., Connick v. Mairena,* —— U.S. ——, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988); and Texas law in *Crane v. State of Texas,* 766 F.2d 193 (5th Cir.) *cert. denied sub nom.,*

---

3. In *Pembaur,* the Supreme Court adopted the Sixth Circuit Court of Appeals' view that, under Ohio law, a prosecutor was a county official authorized to establish official county policy under certain circumstances. 475 U.S. at 476, 106 S.Ct. at 1296, 89 L.Ed.2d at 461.

4. This court adopted as binding precedent all decisions of the former Fifth Circuit Court of Appeals in *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

*Dallas County, Texas v. Crane,* 474 U.S. 1020, 106 S.Ct. 570, 88 L.Ed.2d 555 (1985). However, Georgia law differs in several significant respects from the law in either of these states. Contrary to the result reached in the Fifth Circuit Court of Appeals' decisions, the district attorney for the Atlanta Judicial Circuit is not a Fulton County official, but rather a state official acting on behalf of the state when exercising his discretion in prosecutorial decisions.

The plaintiff in *Crane v. State of Texas, supra,* sued Dallas County under § 1983, challenging the district attorney's issuance of a misdemeanor capias without a finding of probable cause. The court, evaluating Texas law, concluded that the district attorney, although technically a state official, effectuated county policy: "[M]uch like the county itself, [the district attorney's] office is a local entity, created by the State of Texas and deriving its powers from those of the State, but limited in the exercise of those powers to the county, filled by its voters and paid for with its funds." 766 F.2d at 195.

The district court, in a well-reasoned opinion, distinguished *Crane* from the instant case on the basis of several important differences between Texas and Georgia law. First, the court noted, Georgia's district attorneys are paid by state funds, although the county or counties within the district attorney's judicial circuit may supplement their salaries. O.C.G.A. § 15–18–10 (1982). In contrast, Texas district attorneys are compensated by county funds, although their salaries are partly reimbursed by the state. While the Georgia district attorney's technical status as a state employee is not dispositive, the fact that he is paid by the state indicates that he acts on the state's behalf. Second, Georgia is divided into a number of judicial circuits, the great majority of which are comprised of more than one county. *See id.* § 15–6–1. The majority of the judicial districts in Texas, on the other hand, correspond to a single county. In this particular instance, the boundaries of the Atlanta Ju-

dicial Circuit are coincidentally coterminous with Fulton County. Hence, although it is true that the district attorney for the Atlanta Judicial Circuit is elected solely by Fulton County voters, it is also true that district attorneys in other judicial circuits have a constituency composed of voters from several counties and do not confine their duties to one county in particular, but rather to all the counties comprising that circuit. Third, the State of Georgia exercises its prosecutorial powers through its attorney general, *id.* § 15–18–7, contrary to Texas, which vests prosecutorial powers in its counties.

■ Similarly, in *Mairena v. Foti, supra,* the district attorney of New Orleans Parish was sued in his official capacity under § 1983 for injuries the plaintiff sustained in connection with his erroneous arrest and incarceration on an outstanding material witness warrant.[5] Although the central issue in that case was whether the plaintiff satisfied the custom or policy requirement for municipal liability, the court noted in dictum that the plaintiff's suit against the district attorney was not barred by the Eleventh Amendment, citing *Crane's* holding that a Texas district attorney was a local government official for § 1983 purposes and finding "no basis to distinguish this Louisiana case from *Crane.*" 816 F.2d at 1064 n. 1. Regardless of whether this court might have concluded differently, Louisiana law is sufficiently distinct from the law of Georgia to justify the different outcome in *Mairena.* The New Orleans parish district attorney is jointly paid in equal installments by the State and the City of New Orleans, in contrast to Georgia law, in which the State provides the bulk of the district attorney's compensation. Also, as in Texas, a majority of the judicial districts in Louisiana are single-parish districts, unlike Georgia. Finally, although Louisiana, like Georgia, appears to act through its attorney general, this single provision is not enough, on bal-

5. For liability purposes, a suit against a public official in his official capacity is considered a suit against the local government entity he represents. *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114, 122 (1985).

ance, to command a finding that the district attorneys in Georgia are county officials.

The Georgia district attorney's relationship to the county involves merely budgetary and administrative matters. *See Owens, supra,* 690 F.Supp. at 1027. The alleged violation of Owens' constitutional rights, however, arises out of the district attorney's exercise of discretion in the prosecution of state offenses, a state-created power. We have previously acknowledged that an official may simultaneously exercise county authority over some matters and state authority over others. *Parker v. Williams, supra,* 862 F.2d at 1479. If, for example, Owens' grievance had involved an employment termination by the district attorney, which is an administrative function, such an act might be characterized as an exercise of county power. *See, e.g., Van Ooteghem v. Gray, supra,* 774 F.2d at 1337 (in finding municipal liability, court held that "[w]hatever state duties a County Treasurer may have, ... in the personnel matters at issue here, [he] was wearing his county hat.") However, the matter in dispute here is the district attorney's authority over prosecutorial decisions, which is vested by state law pursuant to state authority.

The judgment of the district court is hereby

AFFIRMED.