St. Louis v. Eldredge, et al.          CV-95-178-B    03/31/97

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**<u>Vincent St. Louis</u>**

   **v.**                                                95-178-B

**<u>Carleton Eldredge, et al.</u>**

### <u>MEMORANDUM AND ORDER</u>

Vincent St. Louis alleges, among other things, that Rockingham County is liable pursuant to 42 U.S.C.A. § 1983 (West 1994) for former Rockingham County Attorney Carleton Eldredge's alleged policy decision to suppress St. Louis's First Amendment rights through a baseless obscenity prosecution. The county has moved for summary judgment asserting that it cannot be held liable for Eldredge's conduct because Eldredge was performing a state function under the direction of the New Hampshire Attorney General when he decided to prosecute St. Louis. For the reasons that follow, I grant the county's motion.

## ANALYSIS

Municipalities are not liable under the doctrine of *respondeat superior* for constitutional violations committed by their employees simply because of the employment relationship. Monell v. Department of Social Servs., 436 U.S. 658, 692-94 (1978). Municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. . . ." Id. at 694.

While municipal "policy" is found most obviously in municipal ordinances, regulations, and similar commands or authorizations, see, e.g., id., at 661 (official pregnancy leave policy), it may also be found in formal or informal *ad hoc* 'policy' choices or decisions of municipal officers authorized to make and implement municipal policy, see, e.g., Pembaur v. City of Cincinnati, 475 U.S. 469, 484-85 (1986) (plurality decision) (single "policy" decision by county prosecutor). See Spell v. McDaniel, 824 F.2d 1380, 1387 (4th Cir. 1987) (comparing written policymaking with *ad hoc* policymaking). Only those officials who have "final policymaking authority" may subject their municipal

2

employer to § 1983 liability by their actions.  City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).

While the Supreme Court has recognized that cases will exist where policymaking responsibility is "shared among more than one official or body," it has also stressed that "the authority to make municipal policy is necessarily the authority to make *final* policy."  Id. at 126-27 (emphasis in original) (citing Pembaur, 475 U.S. at 481-84).  The mere fact that a municipal employee exercises discretion in making decisions is not enough to establish final policymaking authority.  Id. at 126; Flores v. Cameron County, Texas, 92 F.3d 258, 269 (5th Cir. 1996).  The Supreme Court has precluded the possibility of finding that a county employee is a final policymaker because he or she has "de facto policymaking authority."  Praprotnik, 485 U.S. at 130-31.  Thus, a municipal employee cannot be a "final policymaker" unless his decisions are "final and unreviewable and are not constrained by the official policies of superior officials."  Feliciano v. City of Cleveland, 988 F.2d 649, 655 (6th Cir. 1993) (drawing this conclusion from Praprotnik, 485 U.S. at 127); see also Worsham v. City of Pasadena, 881 F.2d 1336, 1340 (5th Cir. 1989).

3

Implicit in the Pembaur and Praprotnik decisions is the corollary proposition that municipal liability cannot attach in cases where the final policymaking authority rests with the state.  See McMillian v. Johnson, 88 F.3d 1573, 1580 (11th Cir. 1996), cert. granted, 65 U.S.L.W. 3414 (U.S. Dec. 6, 1996) (No. 96-542); Bockes v. Fields, 999 F.2d 788, 791 (4th Cir. 1993); Woods v. City of Michigan City, Indiana, 940 F.2d 275, 279 (7th Cir. 1991); Laidley v. McClain, 914 F.2d 1386, 1391 (10th Cir. 1990); Owens v. Fulton County, 877 F.2d 947, 950 (11th Cir. 1989) (per curiam); Baez v. Hennessy, 853 F.2d 73, 77 (2d Cir. 1988). Plaintiff argues that I must ignore any possible oversight by the state when I determine whether a county official is a "final policymaker."  Plaintiff's reasoning, however, runs counter to the fundamental premise that municipal liability attaches in § 1983 claims only to those acts that are carried out by officials who are "responsible for establishing final government policy respecting such activity."  Pembaur, 475 U.S. at 479, 483. Therefore, I must determine whether the Rockingham County Attorney acted as the "final policymaking authority" when he made the decision to prosecute St. Louis, a decision which allegedly

4

violated St. Louis's constitutional rights.

Whether a particular official has "final policymaking authority" is a question of state law. <u>Praprotnik</u>, 485 U.S. at 123; <u>Pembaur</u>, 475 U.S. at 483. In <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701 (1989), the Court instructed:

> As with other questions of state law relevant to the application of federal law, the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury. Reviewing the relevant legal materials, including state and local positive law, as well as 'custom or usage' having the force of law . . . the trial judge must identify those officials or governmental bodies who speak with final policy-making authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.

<u>Jett</u>, 491 U.S. at 737 (emphasis omitted, citation omitted).

New Hampshire Rev. Stat. Ann. § 7:34 (1988) sets forth the duties of the county attorney, directing that "[t]he county attorney of each county shall be under the direction of the attorney general, and, in the absence of the latter, he shall perform all the duties of the attorney general's office for the county." Furthermore, New Hampshire law provides that the attorney general, an officer of the state appointed by the

5

governor of New Hampshire, "shall have and exercise general supervision of the criminal cases pending before the supreme and superior courts of the state, and with the aid of the county attorneys . . . shall enforce the criminal laws of the state." N.H. Rev. Stat. Ann. § 7:6 (Supp. 1996); see also N.H. Rev. Stat. Ann. § 21-M:2 (1988). Further, N. H. Rev. Stat. Ann. § 7:11 (1988) provides that officers charged with enforcing criminal law, such as the county attorney, "shall be subject to the control of the attorney general whenever in the discretion of the latter he shall see fit to exercise the same." Thus, while the county attorney is an officer of the county, see N.H. Rev. Stat. Ann. § 655:9 (1986) (designating the county attorney as a "county officer"), the New Hampshire legislature has deprived county attorneys of final policymaking authority in matters of criminal prosecution.

The New Hampshire Supreme Court has occasionally addressed the relationship of the attorney general to the county attorneys in enforcing the state's criminal laws. Reading the opinions as a whole, it is clear that New Hampshire law places the final policymaking authority for the decision to enforce state criminal

6

statutes with the attorney general.  In <u>Wyman v. Danais</u>, 101 N.H. 487 (1958), the New Hampshire Supreme Court clarified the duties of the attorney general and the county attorney in criminal prosecutions and decided that the statutory scheme then in place, which does not materially differ from the current scheme, demonstrated "a legislative purpose to place ultimate responsibility for criminal law enforcement in the Attorney General, and to give him the power to control, direct and supervise criminal law enforcement by the county attorneys in cases where he deems it in the public interest."  <u>Id.</u> at 490.  In its decision, the court ruled that the relied upon New Hampshire statutes defining the relationship between the attorney general and the county attorney added up to "more than the power of advice, recom-mendation and exhortation."  <u>Id.</u>  It also noted that the attorney general's power to control the prosecution of criminal cases had been long enshrined in both New Hampshire's statutory scheme and in common law.  <u>Id.</u>; <u>see also</u> <u>Eames v. Rudman</u>, 115 N.H. 91, 92 (1975).

Under New Hampshire's statutory scheme governing the authority to make prosecutorial policy, it is clear that the attorney general, and not individual county attorneys, are the

7

final policymaking authority, for the attorney general's office retains the power at all times to intervene and prevent a prosecution commenced in violation of a defendant's constitutional rights. Thus, when a county attorney decides to prosecute someone for a violation of state law in New Hampshire, he acts for the state as a "deputy" of the attorney general, whose office maintains final policymaking authority over the county attorney. As a result, St. Louis's municipal liability action against the county based on Eldredge's decision to prosecute him must fail.[1] See Owens, 877 F.2d at 950 (under Georgia law, district attorney acts as state, not local policymaker, when making prosecutorial decisions); Baez, 853 F.2d at 77 (state, not county, established policy of how New York district attorney should prosecute violations of state law).

**CONCLUSION**

Rockingham County's motion for summary judgment (document

---

[1] Although St. Louis's complaint alleges that the county is also liable on a failure to train theory, he has not pursued this argument in responding to the county's motion for summary judgment. Accordingly, I do not address the merits of this claim.

8

no. 41) is granted as to St. Louis's claim based on 42 U.S.C.A. § 1983.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge


March 31, 1997

cc:   Brian T. Stern, Esq.
      Donald E. Gardner, Esq.
      William G. Scott, Esq.