Timothy L. **RUBLE,** and Charles B. Anderson, Plaintiffs,

v.

Lieutenant **KING,** Lieutenant Mills, Officer Ashford, Officer Burke, Officer Mills, Officer Jones and Four Unknown Correctional Officers, in their respective individual and official capacities, Defendants.

Civil No. 1:93–CV–1024–JEC.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 18, 1995.

Steven Paul Berne, Office of Steven Paul Berne, Atlanta, GA, for Plaintiffs.

Millard C. Farmer, Jr., Office of Millard C. Farmer, Jr., Atlanta, GA, Frank L. Derrickson, Office of Frank L. Derrickson, Decatur, GA, for Defendants.

### ORDER

CARNES, District Judge.

This case is presently before the Court on Defendant King's Motion for Summary Judgment [49], Defendants Ashford, Burke, C. Mills, D. Mills' Motion for Summary Judgment [55] and Defendant Jones' Motion for Summary Judgment [75]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Defendant King's Motion for Summary Judgment [49] is granted in part and denied in part. Defendants Ashford, Burke, C. Mills, D. Mills' Motion for Summary Judgment [55] is granted in part and denied in part. Defendant Jones' Motion for Summary Judgment [75] is granted in part and denied in part.

### BACKGROUND

At the time of the events in question, plaintiffs were inmates at the United States Penitentiary in Atlanta, Georgia (hereinafter "USP–Atlanta"). Defendants King, Denise Mills (hereinafter "D. Mills"), Ashford, Burke, M.A. Jones,[1] and Cedric Mills (hereinafter "C. Mills") were all employed by the federal government at the United States Penitentiary. Defendants unknown correctional officers one through four were also employed by the federal government as correctional officers at the United States Penitentiary. Defendant King was a Lieutenant

---

1. Plaintiffs' complaint named M.A. Jones as a defendant. On September 17, 1993, this Court dismissed defendant Jones from this action for failure to serve. (Order [6].) Plaintiffs then filed another suit against M.S. Jones. *Ruble, et al. v. Jones,* 1:93–cv–2798A–JEC. The Court permitted consolidation of that case with this case. (Order [58].) It appears that M.S. Jones and M.A. Jones are the same person. According to defendant Jones' motion for summary judgment, defendant's name is Melvin A. Jones.

and the supervisor at USP–Atlanta on the date of the incident that is the subject of this litigation. (Aff. of King,[2] at ¶ 1.) Defendant D. Mills is currently a Captain in the Federal Bureau of Prisons; however, at the time of the events in question in this case, she was a Lieutenant at USP–Atlanta. (Dec. of D. Mills,[3] at ¶¶ 1, 3.) Defendant Burke is currently a Senior Officer Specialist in the Federal Bureau of Prisons; however, at the time of the events in question, he was a Corrections Officer at USP–Atlanta. (Dec. of Burke, at ¶¶ 1, 3.) Defendant C. Mills was a Recreation Specialist in the Federal Bureau of Prisons at the time of the events in question and still holds that position. (Dec. of C. Mills, at ¶¶ 1, 3.) Defendant Ashford was a Senior Officer Specialist at the Federal Bureau of Prisons and still holds that position. (Dec. of Ashford, at ¶¶ 1, 3.) Defendant Jones was a Correctional Officer in the Federal Bureau of Prisons at the time of the events in question and still holds that position. (Dec. of Jones,[4] at ¶ 1.)

On January 23, 1993, plaintiffs Anderson and Ruble were both housed in cell 3–18 of the Segregation Unit due to disciplinary violations. (Dec. of Ashford, at ¶ 4.) In the morning, defendant D. Mills was informed by Correctional Officer Anthony (who is not named in this suit) that plaintiff Anderson had thrown sour milk on the officer. (Dec. of D. Mills, at ¶ 4.) Defendant D. Mills went to the cell to speak with plaintiff Anderson. (*Id.*) When she arrived at the cell, she saw "milk and fruit on the floor, both inside and outside the cell." (*Id.*) Additionally, the cell door was covered with sheets and blankets that prevented observation into the cell. It is against prison regulations to block visibility into the cell and to place foreign substances on the floor. (*Id.*)

According to defendant D. Mills, when she spoke to plaintiffs Anderson and Ruble, both

refused to voluntarily leave the cell. (*Id.*) Defendant D. Mills then reported this to her superior officer, Lieutenant Thieke. (Dec. of D. Mills, at ¶ 6.) Additionally, she informed Lieutenant Thieke that Correctional Officer Anthony had seen a broken broom handle inside the cell. (*Id.*) Lieutenant Thieke went to the cell to speak with plaintiffs. (*Id.*)

At approximately 9:00 a.m., Lieutenant Thieke went to plaintiff's cell and observed a blanket covering the front of the cell. (Dec. of Thieke, at Ex. A.[5]) She also observed plaintiff Anderson holding a wooden stick that appeared to be about two feet in length with a semi-sharp end. (*Id.*) In her memorandum regarding the incident, Lieutenant Thieke states the following:

> I asked inmate Anderson what is the problem he stated he was just real tired of staff not doing what they are supose [sic] to and it was too long of a story to get into, at this time inmate Ruble stated Lieutenant you [sic] going to have to do something about this were [sic] not going to do anything they request. Inmate Anderson was asked what started this, and he replied Lieutenant you always been straight up but today I don't want you involved you and Lieutenant Mills I respect but your [sic] going to have to get the SORT Team to come in and get us. At this time I ordered inmate Anderson to cuff up and come out to talk about the situation, he stated, No. Inmate Ruble was ordered to cuff up and he replied no Lieutenant you [sic] going to have to do what you got to do. At this time inmate Anderson stated, "Lieutenant were [sic] going to have to Rock & Roll".

(*Id.*)

Later that morning, defendant D. Mills observed that plaintiffs had thrown baby oil on the floor outside their cell and put more

---

**2.** The affidavit of defendant King is attached to his Motion for Summary Judgment [49].

**3.** The declarations of defendants D. Mills, Burke, C. Mills and Ashford are attached to Defendants Ashford, Burke, C. Mills, and D. Mills' Motion for Summary Judgment [55].

**4.** The declaration of Jones is attached to his Motion for Summary Judgment [75].

**5.** The declaration of Lieutenant Thieke is attached to Defendant Jones' Motion for Summary Judgment [75] as Exhibit 5. Lieutenant Thieke's name is now Terry Thieke Elzey. To minimize confusion, the Court will refer to her as Lieutenant Thieke—her name on January 23, 1993. Additionally, "Exhibit A" is the memorandum Lieutenant Thieke wrote on January 23, 1993 regarding the "Force Cell Move/Use of Force."

crushed fruit on the floor inside the door. (Dec. of D. Mills, at ¶ 7.) Additionally, defendant D. Mills observed that plaintiffs had tied a tee-shirt around the door to prevent it from opening. (*Id.*)

Defendant Ashford also went to plaintiffs' cell and observed that plaintiffs "had started a fire, used bed clothes to obstruct vision into the cell, tied their cell door shut to prevent anyone from opening it, thrown oil and other objects on the floor inside and outside their cell, and had a sharpened stick in the cell." (Dec. of Ashford, at ¶ 5.) Defendant Ashford told his superior officer about the situation. (*Id.*) Also, defendant Ashford concluded that plaintiffs were under the influence of alcohol. (*Id.* at ¶ 7.) Defendant Ashford also states that plaintiffs were ordered to "step to the door, to be handcuffed, and taken out of the cell, but they refused to do so." (*Id.* at ¶ 7.) At some point, a staff psychologist spoke with plaintiffs to try to resolve the situation. (*Id.* at ¶ 7.)

After her conversation with plaintiffs, Lieutenant Thieke spoke to the Captain who advised her to call defendant King and get a SORT [6] team together for a "force cell move" to remove plaintiffs from their cell and move plaintiffs to the strong cells on the first floor. (Dec. of Thieke, at Ex. A.) A "force cell move" is a maneuver whereby a team of correctional officers enters an inmate's cell to take the inmate to a strong cell on another level. (Dec. of D. Mills, at ¶ 8.)

At approximately 11:15 a.m., a SORT team headed by defendant King entered the segregation floor. (Dec. of Thieke, at Ex. A.) Defendant King was the supervisor who directed the prison officers in bringing the inmates under control. (Aff. of King, at ¶ 8.) The SORT Team consisted of nine members: Officer Shealey, Officer M.A. Jones, Officer Burke, Officer R. Lee, Officer Estep, Officer Holsey, SORT member C. Mills, Officer Morton, and Counselor Paschall as Camera Officer. (Dec. of Thieke, at Ex. A.)

According to defendant Burke, at one point prior to entry, he asked plaintiffs to come out of the cells. Burke states that one of the plaintiffs said, "Bring it on, we will kill one of you." (Dec. of Burke, at ¶ 8.)

The SORT Team attempted to enter the cell, but had difficulty getting inside the cell since the door was tied shut. (Dec. of Ashford, at ¶ 9.) Defendant King cut the strips of cloth that were used to tie the door shut. (Dec. of Burke, at ¶ 6.) Feces had been smeared on the door. (Dec. of Ashford, at ¶ 9.) Additionally, urine, homemade alcohol and other liquids were on the floor. (*Id.*) Plaintiffs threw a liquid substance containing urine, feces, milk and alcohol onto the officers. (Dec. of Ashford, at ¶ 9; Dec. of Burke, at ¶ 6.) Plaintiffs also stuck defendant King and Ashford several times with the sharpened wooden stick. (Dec. of Ashford, at ¶ 9.)

Once the SORT team entered the cell, they were able to restrain plaintiffs after a physical struggle. (Dec. of C. Mills, at ¶ 5; Dec. of Jones, at ¶ 6; Dec. of Ashford, at ¶ 9.) Plaintiffs Anderson and Ruble both state that they were "quickly overwhelmed and [were] not noticeably injured during the 'force cell.'" (Aff. of Anderson, at ¶ 3; Aff. of Ruble, at ¶ 3.) According to both plaintiffs, they were then dragged by their feet across the floor and down three flights of stairs to the strong cell. (Aff. of Anderson, at ¶ 4; Aff. of Ruble, at ¶ 4.) Both plaintiffs state that their heads came into violent contact with the stair treads and the floor while they were dragged to the strong cells. (*Id.*) Once plaintiffs reached the floor where the strong cells are located, both were lifted by their arms and dragged approximately 150 feet to the strong cell. (Aff. of Anderson, at ¶ 5; Aff. of Ruble, at ¶ 5.)

According to plaintiff Anderson, once he was placed in the strong cell, he was "beaten by a minimum of four officers who kicked me in the groin, back and head." (Aff. of Anderson, at ¶ 2.) He states that at the time he was beaten, he was "handcuffed, shackled, unarmed and posed no threat to any person, nor was [he] creating any disturbance or disorder within the facility." (*Id.* at ¶ 11.) Plaintiff Anderson states that defendants D. Mills, Burke, Jones, and C. Mills witnessed

---

**6.** The record does not explain what a "SORT" team is exactly. It appears to be some sort of an acronym like "SWAT" (Special Weapons and Tactics).

the beating and failed to intervene on his behalf. (*Id.* at ¶ 7.) Plaintiff Anderson also states that defendant King videotaped this beating and failed to intervene on his behalf. Plaintiff Anderson then states that he was " 'four-pointed' (i.e. arms and legs secured individually)" to a bed with handcuffs and shackles for fifteen and one half hours. (*Id.* at ¶ 9.) Plaintiff Anderson also states that he requested medical attention, but was not transported to Grady Hospital for approximately thirty-six hours. (*Id.* at ¶ 10.)

According to plaintiff Ruble, when he reached the floor where the strong cell is located, an "an unknown member of the team of officers who had restrained [him] swung a helmet and hit [him] in the head." (Aff. of Ruble, at ¶ 6.) Then, according to plaintiff Ruble, after he was placed into the strong cell, "at least four (4) officers, including Officer Ashford, attacked [him], threw [him] against the wall, smashed [his] head against the wall several times, and when [he] fell to the floor, [he] was kicked and beaten until [he] passed out." (*Id.*) Plaintiff Ruble states that when he was beaten in the strong cell, he was "handcuffed, shackled, unarmed and posed no threat to any person, nor was [he] creating any disturbance or disorder within the facility." (*Id.* at ¶ 10.) According to plaintiff Ruble, defendants D. Mills, Burke, Jones, and C. Mills witnessed the beating and failed to intervene on his behalf. (*Id.* at ¶ 7.) Also, plaintiff states that defendant King videotaped the beating and failed to intervene on his behalf. (*Id.* at ¶ 8.) Plaintiff Ruble was taken to Grady Hospital for treatment of injuries resulting from the beating. (Aff. of Ruble, at ¶ 9.)

All defendants deny having beaten plaintiffs or having used any excessive force during the force cell move.

According to Lieutenant Thieke's memorandum, both plaintiffs were examined by physician assistant Perez who checked plaintiffs' injuries and also their restraints. (Dec. of Thieke, at Ex. A.) At approximately 2:45 p.m., physician assistant Perez informed

Lieutenant Thieke that plaintiff Ruble needed to go to an outside medical facility for trauma assessment due to plaintiff Ruble's bleeding from the nose area. (*Id.*) At approximately 4:30 p.m., "the final decision to escort inmate Ruble [to the hospital] was determined to be necessary due to trauma to the eye." (*Id.*) Plaintiff Ruble was escorted to the hospital by defendant King, Officer Shealey, Officer Morton, defendant Jones, and Officer Lee. (*Id.*)

As a result of the force cell move, five members of the force cell team received injuries. (Dec. of Thieke, at Ex. A.) Defendant King sustained a cut on his left hand between the thumb and first finger while he was cutting the tee shirt and blanket down from the cell door. (Dec. of Thieke, at Ex. A.) Defendant Jones received a head injury when plaintiff Anderson kicked him and he slipped on the floor and hit his head on the range grill. (Dec. of Jones, at ¶ 7 and attached exhibit.) Defendant Burke broke his right hand and was off work until it healed. (Dec. of Burke, at ¶¶ 7, 9, 11.) [7] Additionally, Officer Lee was hit by plaintiff Ruble on the hand and wrist with a helmet that plaintiff Ruble took off the head of one of the officers and used as a weapon. (*Id.*; Dec. of Ashford, at ¶ 10.) Officer Estep hit his elbow on the helmet that was being used by plaintiff Ruble as a weapon. (Dec. of Thieke, at Ex. A; Dec. of Ashford, at ¶ 10.)

In their Complaint brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), plaintiffs allege claims of excessive force in violation of their Fifth and Fourteenth Amendment rights; cruel and unusual punishment in violation of their Eighth Amendment rights; failure to provide medical care in violation of plaintiff Anderson's Eighth Amendment rights; and state law claims of assault and battery, and intentional infliction of emotional distress.

---

**7.** It is not clear exactly how defendant Burke broke his hand. In his declaration, he states that he broke it "during the struggle" inside the cell. (Dec. of Burke, at ¶ 7.) Lieutenant Thieke states

in her memorandum that defendant Burke "hit his right hand going into the cell." (Dec. of Thieke, at Ex. A.)

## DISCUSSION

### I. Summary judgment standard

■ Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552.

■ The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323, 106 S.Ct. at 2552; *Apcoa, Inc. v. Fidelity Nat'l Bank,* 906 F.2d 610, 611 (11th Cir.1990). However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence [8] designating " 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. at 2553 (quoting FED.R.CIV.P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248, 106 S.Ct. at 2510. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50, 106 S.Ct. at 2510–11. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11. Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

### II. Claims against defendants in their official capacities

■ Plaintiffs have brought this suit against defendants pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Plaintiffs have sued the defendants in both their official capacities and their individual capacities. A suit against a defendant in his official capacity is synonymous with a claim against the sovereign or entity for whom the defendant acts. *Owens v. Fulton County,* 877 F.2d 947, 951 n. 5 (11th Cir.1989). Thus, by suing defendants in their official capacities, plaintiffs have sued the United States. Defendants argue that the doctrine of sovereign immunity bars this suit against defendants in their official capacities. Additionally, defendants contend that the United States has not waived its sovereign immunity in this case. In their responses, plaintiffs do not address this argument.

---

8. The non-moving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

 The Court concludes that the doctrine of sovereign immunity bars plaintiffs' claims against defendants in their official capacities. In *Bivens,* the Supreme Court authorized the recovery of damages in suits against federal officials for constitutional violations. *Id.* at 395, 91 S.Ct. at 2004. In a concurring opinion, Justice Harlan stated that, although it may be desirable to have a direct remedy against the sovereign, the sovereign "still remains immune to suit." *Id.* at 410, 91 S.Ct. at 2012. "*Bivens* authorizes suits against individual federal officials, not against the United States." *McCollum v. Bolger,* 794 F.2d 602, 608 (11th Cir.), *cert. denied, McCollum v. Tisch,* 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1986). Thus, unless the sovereign has waived its immunity, the sovereign is immune from suit in a *Bivens* action. *Brown v. United States,* 653 F.2d 196, 199 (5th Cir.), *cert. denied,* 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1981).

The United States has not waived its sovereign immunity in this case. Accordingly, the Court grants summary judgment on both federal and state law claims for all defendants in their official capacities.

### III. Claims against defendants in their individual capacities

#### A. Eighth Amendment claims

 Plaintiffs have alleged that defendants' actions violated the Fifth, Eighth and Fourteenth Amendments.[9] (Compl. [1] at ¶ 1.) Specifically, plaintiffs claim that defendants used excessive force upon entering the cell, then used excessive force in dragging plaintiffs to the strong cell, and then either participated in the alleged beating or failed to intervene to stop the alleged beating. The proper analysis in this case is under the Eighth Amendment. The Eighth Amendment is "specifically concerned with

the unnecessary and wanton infliction of pain in penal institutions [and] serves as the primary source of substantive protection to convicted prisoners ... where the deliberate use of force is challenged as excessive and unjustified." *Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986). The Court need not analyze this case under the Fifth Amendment because the Due Process Clause of the Fifth Amendment affords plaintiffs no more protection than does the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Whitley,* 475 U.S. at 327, 106 S.Ct. at 1088; *see Graham v. Connor,* 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 1871 n. 10, 104 L.Ed.2d 443 (1989) ("Any protection that 'substantive due process' affords convicted prisoners against excessive force is, ... at best redundant of that provided by the Eighth Amendment."); *Brown v. Smith,* 813 F.2d 1187, 1188 (11th Cir.1987) (analyzing claim of excessive force against prison inmate under Eighth Amendment Cruel and Unusual Punishment clause). Additionally, this case does not present a claim of violation of the Fourteenth Amendment since the defendants are federal actors and not state actors. The Fourteenth Amendment applies to actions by state actors.

#### 1. Unnecessary and wanton infliction of pain

 The Eighth Amendment protects prisoners from the infliction of cruel and unusual punishment. U.S. CONST. amend. VIII. Not every infliction of pain upon a prisoner, however, will constitute cruel and unusual punishment in violation of the Eighth Amendment. *Whitley,* 475 U.S. at 319, 106 S.Ct. at 1084. An Eighth Amendment claimant must prove the infliction of unnecessary and wanton pain and suffering

9. In their response, plaintiffs discuss a Fourth Amendment claim. It appears plaintiffs may have meant to discuss their Fifth Amendment claim. Plaintiffs, however, have never pled a Fourth Amendment claim and therefore the Court will not consider such arguments at this time. (*See* Compl. [1] at ¶¶ 26, 28, 30) (pleading violations of Fifth and Eighth Amendments).) Moreover, plaintiffs' arguments with regard to their Fourth Amendment claim all hinge on the alleged excessive force used by defendants.

Such a claim is properly analyzed under the Eighth Amendment as the prisoners are convicted prisoners and not pretrial detainees. *See Graham v. Connor,* 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 1871 n. 10, 104 L.Ed.2d 443 (1989) (choosing not to decide whether Fourth Amendment provides protection beyond point at which arrest ends and pretrial detention begins, but stating that once conviction occurs, Eighth Amendment serves as the source of protection against excessive force.)

by governmental officials in order to prevail. *Id.* at 320, 106 S.Ct. at 1084. The question turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.1973), *cert. denied sub nom John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). Prison officials who "maliciously and sadistically use force to cause harm" violate contemporary standards of decency. *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992).

■ An Eighth Amendment claim contains both an objective and a subjective component. The objective component deals with the use of force: that is, have prison officials caused the unnecessary and wanton infliction of pain by "maliciously and sadistically" using force to cause harm. *Hudson,* 503 U.S. at 8–12, 112 S.Ct. at 1000–01. Thus, a de minimis use of physical force, such as a push or a shove, will not suffice as proof of an Eighth Amendment violation. *Id.* at 8–10, 112 S.Ct. at 1000. Yet, a prisoner need not show serious injury to recover under the Eighth Amendment. *Id.* at 10–12, 112 S.Ct. at 1001. Blows that caused bruises, swelling, loosened teeth and a cracked dental plate are sufficient to satisfy the objective component of the Eighth Amendment. *Id.* at 8–10, 112 S.Ct. at 1000. With regard to the subjective component, prison officials must have "a culpable state of mind." *Hudson,* 503 U.S. at 10, 112 S.Ct. at 1001. An Eighth Amendment claim cannot succeed without evidence that the prison official acted with "obduracy and wantonness," rather than merely acting negligently or inadvertently. *Whitley,* 475 U.S. at 319, 106 S.Ct. at 1084.

■ This case involves conduct that occurred during a prison disturbance. Consequently, the Court must balance the "prisoner's Eighth Amendment rights with the competing institutional concerns for the safety of prison staff and inmates." *Williams v. Burton,* 943 F.2d 1572, 1575 (11th Cir.1991). "Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in

their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). Prison officials must ensure not only the safety of the prison staff and visitors, but also must take measures to ensure the safety of the inmates. *Whitley,* 475 U.S. at 320, 106 S.Ct. at 1084. The factors that a court must consider when evaluating whether prison officials' use of force was reasonable are (1) the need for the application of force; (2) the relationship between the need and the amount of force used; and (3) the extent of injury inflicted. *Whitley,* 475 U.S. at 321, 106 S.Ct. at 1085 (quoting *Johnson v. Glick,* 481 F.2d at 1033); *Williams,* 943 F.2d at 1575.

■ Were plaintiffs complaining only about the force used to remove them from their cells, this Court would be hard pressed to deny defendants' motion for summary judgment. Through their extreme and mutinous conduct, these plaintiffs created a highly dangerous situation that required the use of force, both to subdue plaintiffs and to maintain the safety of the institution, itself. Indeed, plaintiffs do not appear to dispute defendants' evidence regarding plaintiffs' conduct prior to the move, which included: throwing sour milk on several guards, starting a small fire in their cell, tying their cell door shut with cloth strips and covering it with feces, preventing ready observation into their cell by hanging sheets and blankets on the bars, making the floor inside and outside of the cell slippery and dangerous by the placement of fruit and baby oil on the floor, arming themselves with a sharpened stick or broken broom handle, rejecting orders to vacate and all other mediation efforts, and making clear their intentions to violently defend their domain when they stated, "Lieutenant, do what you have to do, we're going to have to Rock and Roll."

The above events created precisely the type of situation in which great deference must be given to prison officials' judgment and, as noted, were plaintiffs complaining only about the force used to subdue them, they likely could not overcome defendants' motion for summary judgment. Plaintiffs

argue, however, that even after they had been subdued, shackled, and subdued, defendants used excessive force in transporting them to another location and that defendants beat them once they arrived at this new destination.

Defendant deny generally the acts attributed to them by plaintiffs following the shackling of plaintiffs and deny that any force used was excessive, under the circumstances. Accordingly, there is a disputed issue of fact that must be resolved by the trier of fact. The Court cannot say, as a matter of law, that those defendants who participated in the force cell move (defendants King, Ashford, Burke, C. Mills and Jones) did not "maliciously and sadistically use force to cause harm" once they had removed plaintiffs from the cell.

Similarly, there is a disputed issue of fact regarding the alleged beating and excessive force administered once plaintiffs were in the safe room and the Court cannot decide, as a matter of law, that defendants did not use excessive force. With regard to the allegedly excessive force administered in the safe room, the Court notes plaintiffs allege that only one defendant, defendant Ashford, participated in the claimed beating. Plaintiffs claim that the remaining defendants (King, D. Mills, Burke, Jones, and C. Mills) witnessed the beating and failed to intervene on plaintiffs' behalf.

The above defendants argue that, as mere onlookers, they had no duty to intervene. The controlling law does not support defendants' argument. A police officer has a duty to intervene when another officer uses excessive force. *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1560 (11th Cir.1993), *modified* 14 F.3d 583 (1994); *see Harris v. Chanclor,* 537 F.2d 203, 206 (5th Cir.1976) [10] (upholding liability against jailor who was present and failed to intervene when plaintiff was beaten by police officer); *Gaudreault v. Mun. of Salem, Mass.,* 923 F.2d 203, 207 n. 3 (1st Cir.), *cert. denied,* 500 U.S. 956, 111

S.Ct. 2266, 114 L.Ed.2d 718 (1990) ("An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance."); *O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2nd Cir.1988) ("A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers."); *Ting v. United States,* 927 F.2d 1504, 1511 (9th Cir.1991) (stating that in *Bivens* suit Court will apply general principles of section 1983 law regarding law enforcement officers' duty to intervene to prevent injuries to citizen from other law enforcement officer); *McQurter v. City of Atlanta,* 572 F.Supp. 1401, 1415 (N.D.Ga. 1983) (Forrester, J.) ("failure or refusal to intervene by a supervisory official when a constitutional violation such as a beating is taking place in his presence establishes direct liability under Section 1983"); *Davidson v. Dixon,* 386 F.Supp. 482 (D.Del.1974), *aff'd without op.,* 529 F.2d 511 (3rd Cir.1975) (holding liable prison deputy superintendent who was present at beating of inmates but failed to intervene).

The Eleventh Circuit has reversed a trial court's dismissal of officers who were allegedly present when an arrestee's constitutional rights were violated by other officers. *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1441–42 (11th Cir.1985). The court stated that the arrestee's allegations were sufficient to state a claim that the police officers used excessive force. *Id.* at 1441. Consequently, officers who are present at the scene and fail to take "reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for [their] nonfeasance." *Id.* at 1442.

In another case, the Eleventh Circuit quoted a Seventh Circuit case that explains the rationale behind the imposition of liability upon an officer who fails or refuses to intervene when a "constitutional violation such as

---

**10.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit Court of Appeals handed down prior to

the close of business on September 30, 1981. Additionally, *Harris v. Chanclor* was appealed to the Fifth Circuit from the United States District Court for the Southern District of Georgia.

an unprovoked beating takes place in his presence." *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir.1986). The Seventh Circuit explained that:

> We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge. That responsibility obviously obtains when the nonfeasor is a supervisory officer to whose direction the misfeasor officers are committed. So, too, the same responsibility must exist as to nonsupervisory officers who are present at the scene of such summary punishment, for to hold otherwise would be to insulate nonsupervisory officers from liability for reasonably foreseeable consequences of the neglect of their duty to enforce the laws and preserve the peace.

*Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972).

 These defendants argue, however, that there was no opportunity to intervene because the alleged beating occurred quickly. Although defendants refer the Court to no authority indicating that if the officer did not have time to intervene, the officer will not be held liable for the actions of the other officer, the Court is aware of such authority. *See Gaudreault v. Mun. of Salem, Mass*, 923 F.2d at 207 n. 3 (holding that officer cannot be held liable for failing to intervene when another officer used excessive force when "attack came quickly and was over in a matter of seconds"); *O'Neill v. Krzeminski*, 839 F.2d at 11–12 (finding no liability for officer who failed to intervene when another officer struck citizen with three blows because blows were struck in "such rapid succession that [officer] had no realistic opportunity to attempt to prevent them"); *Ting v. United States*, 927 F.2d at 1511–12 (holding that officers had no opportunity to intervene when another officer shot a suspect who was either prone or on his hands and knees because shooting transpired in matter of seconds).

Plaintiffs allege, however, that the allegedly excessive force in the strong cell went on for a sufficiently long period of time, that defendants could and should have intervened. The Court concludes that a dispute of material fact exists as to whether defendants had the opportunity to intervene.

 Finally, the Court addresses defendants' assertion of the defense of qualified immunity. Qualified immunity protects government officials performing discretionary functions from civil liability if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known." *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1149 (11th Cir.1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Furthermore, the government actor has qualified immunity unless the "act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing." *Id.* In addressing a qualified immunity defense, a two part analysis is used. First the defendant must prove that he was "acting within the scope of his discretionary authority" when the allegedly wrongful acts occurred. *Hudgins v. City of Ashburn*, 890 F.2d 396, 404 (11th Cir.1989) (citing *Rich v. Dollar*, 841 F.2d 1558, 1563–64 (11th Cir. 1988)). Second, if defendant provides such proof, "the burden is on the plaintiff to show that, when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir.), *modified by* 14 F.3d 583 (1994). In the case at bar, neither party disputes that defendants were acting within their discretionary authority when they performed the acts that resulted in this lawsuit. Thus, the determination of defendants' qualified immunity defense turns on whether a clearly established right was violated by their conduct.

 If the law has not staked out a bright line "right" in factual circumstances highly similar to those presented, qualified immunity almost always protects the defendant. *Id.* "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or

allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances.*" *Lassiter,* 28 F.3d at 1150 (emphasis in original). The plaintiff has the burden of showing that the federal rights which were allegedly violated were "clearly established." *Id.* Furthermore, "courts must not permit plaintiffs to discharge their burden by referring to general rules and to the violation of abstract 'rights.'" *Id.*

■ The Court concludes that the law is clearly established that an officer may not beat an inmate who is handcuffed and shackled and poses no danger to the officer. Consequently, defendant Ashford cannot successfully assert the defense of qualified immunity.

■ Additionally, the Court concludes that the law has been clearly established in the Eleventh Circuit, since a time well before the incidents alleged in this case, that an officer must intervene when he is aware that another officer is using excessive force on an inmate or suspect and when he has a reasonable opportunity to intervene. *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1560 (11th Cir.), *modified* 14 F.3d 583 (1993) (decided after incident in question, but citing relevant prior authority); *Byrd v. Clark,* 783 F.2d 1002, 1007 (11th Cir.1986); *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1441–42 (11th Cir.1985); *Harris v. Chanclor,* 537 F.2d 203, 206 (5th Cir.1976); *McQurter v. City of Atlanta,* 572 F.Supp. 1401, 1415 (N.D.Ga.1983) (Forrester, J.).

Given the disputed facts in this case, it is impossible at this juncture for the Court to determine, as a matter of law, precisely what happened. That inability to make that determination also makes it impossible to conclude that the facts were such as to protect the onlooking officers from liability under a theory of qualified immunity. Accordingly, the Court denies summary judgment for all defendants on plaintiffs' claim of cruel and unusual punishment through the use of excessive force, in violation of the Eighth Amendment.

### 2. Failure to provide medical care

In the complaint, plaintiff Anderson alleges that defendants failed to provide medical care in violation of the Eighth Amendment. (Compl. at ¶ 30.) All defendants have moved for summary judgment on this claim. Defendants argue that they are entitled to summary judgment on plaintiff Anderson's claim of failure to provide medical attention. Defendants have filed the declarations of defendants D. Mills, Ashford, Burke, Jones and C. Mills which state that none of these defendants had any duty to take plaintiff Anderson to the hospital as it was not part of their regularly assigned duties to do so. (Dec. of D. Mills, at ¶ 13; Dec. of Ashford, at ¶ 13; Dec. of Burke, at ¶ 12; Dec. of Jones, at ¶¶ 11–12; Dec. of C. Mills, at ¶ 10.) Additionally, defendants argue that, even if they had a duty to provide plaintiff Anderson with medical care, plaintiff Anderson has not provided any evidence to show that defendants' actions constituted deliberate indifference. Defendants point out that it is undisputed that, after the incident, a physician assistant examined each inmate and prison authorities took plaintiff Ruble to the hospital. (*See* Dec. of Thieke, at Ex. A.)

In their responsive pleadings, plaintiffs do not even discuss plaintiff Anderson's claim of failure to provide medical attention. In his affidavit, plaintiff, however, Anderson does discuss the alleged failure to provide medical care. This is the only evidence before the Court regarding this claim. In that affidavit, plaintiff Anderson states that: "While I was 'four pointed' and afterwards, I requested medical attention, but I was not transported to Grady until approximately thirty six hours later, on 24 January, 1993, said failure to render medical assistance was with deliberate indifference and in conscious disregard for my serious medical needs." (Aff. of Anderson, at ¶ 8.)

■ The Court concludes that plaintiff Anderson has failed to provide evidence of a crucial element of an Eighth Amendment claim of deliberate indifference to medical needs. The Eleventh Circuit Court of Appeals utilizes a two pronged analysis to decide claims of deliberate indifference under the Eighth Amendment. First, a court must

evaluate whether there was "evidence of a serious medical need." *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir.1989). Then, once the court finds evidence of a serious medical need, the court must determine "whether [the medical provider's] response to that need amounted to deliberate indifference." *Id.*

■■■ The record is utterly devoid of any evidence as to what plaintiff Anderson's medical condition actually was.[11] In order to sustain a claim, plaintiff must provide evidence that he had a "serious medical need." The Court has not been supplied with plaintiff Anderson's medical record and has no knowledge as to what plaintiff Anderson's medical needs were when he was transported to Grady.

Consequently, the Court grants summary judgment for all defendants on plaintiff Anderson's claim of deliberate indifference to his medical needs.

### B. State law claims

#### 1. Assault and battery

In their complaint, plaintiffs allege a state law claim of assault and battery. (Compl. at ¶ 32.) Defendants have also moved for summary judgment on these claims. As discussed earlier, the doctrine of sovereign immunity bars these state law claims against defendants in their official capacities. With regard to the claims against defendants in their individual capacities, defendants argue that they are immune from suit in their individual capacities since they were acting within their discretionary authority during the events in question.

■■■ Under Georgia law, an official who is acting within the scope of his discretionary authority is immune from suit. *Truelove v. Wilson*, 159 Ga.App. 906, 907, 285 S.E.2d 556 (1981). The official, however, will not be immune from suit if the official was guilty of wilfulness, fraud, malice, or corruption or knowingly acted wrongfully and not in accordance with his "honest convictions of

duty." *Price v. Owen*, 67 Ga.App. 58, 63, 19 S.E.2d 529 (1942). More specifically, conduct that evidences a "wilful intention to inflict the injury, or else was so reckless or so charged with indifference to the consequences ... as to justify the jury in finding a wantonness equivalent in spirit to actual intent" will prevent the official from being protected by immunity. *Truelove*, 159 Ga.App. at 908, 285 S.E.2d 556 (citing *Hawes v. Central of Ga. Ry. Co.*, 117 Ga.App. 771, 772, 162 S.E.2d 14 (1968)).

■■■ In this case, the Court concludes that defendants King, Ashford, Burke, Jones and C. Mills are not immune from suit on plaintiffs' state law claims of assault and battery. This Court cannot find, as a matter of law on the limited facts before it, that if plaintiffs' version of the events in question is believed by the finder of fact, that finder could not conclude that defendants' acts during the transport of plaintiffs from the cell to the strong cell could have been wilfully intended to harm plaintiffs. Additionally, plaintiff claims that defendant Ashford participated in the alleged beating in the strong cell and such a beating, if proven, could likewise be inferred as done with the wilful intent to harm plaintiff.

■■■ The Court notes, however, that plaintiffs' affidavits do not set forth a cause of action against defendant D. Mills for assault and battery. In Georgia, assault and battery is defined as

'[a]ny act of physical violence (and the law will not draw a line between difference degrees of violence), inflicted on the person of another, which is not necessary, is not privileged, and which constitutes a harmful or offensive contact, constitutes an assault and battery.'

*Greenfield v. Colonial Stores, Inc.*, 110 Ga. App. 572, 575, 139 S.E.2d 403 (1964) (quoting *Brown v. State*, 57 Ga.App. 864, 867, 197 S.E. 82 (1938)). It is undisputed that defendant D. Mills did not participate in the force cell move and did not carry either plaintiff from

---

**11.** In her memorandum regarding the incident, Lieutenant Thieke notes that plaintiff Ruble needed to be transported to the hospital for trauma assessment due to his bleeding from the nose area. (Aff. of Thieke, at Ex. A.) Lieutenant Thieke's memorandum makes no reference to plaintiff Anderson's medical condition.

the cell to the strong cell. (Dec. of D. Mills, at ¶ 9.) Nor do plaintiffs allege that defendant D. Mills actually struck either of them in the strong cells. Accordingly, the Court grants summary judgment for defendant D. Mills on plaintiffs' state law claims of assault and battery. The Court denies summary judgment for defendants King, Ashford, Burke, Jones and C. Mills on plaintiffs' state law claims of assault and battery.

### 2. Intentional infliction of emotional distress

In their complaint, plaintiffs allege that defendants' actions constituted intentional infliction of emotional distress under state law. (Compl. at ¶ 32.) Defendants request that the Court grant summary judgment on this claim. In their response to defendants' motions for summary judgment, plaintiffs do not address this claim. The Court concludes that plaintiffs have failed to present any evidence to sustain a claim for intentional infliction of emotional distress.

Under Georgia law, the tort of intentional infliction of emotional distress exists when a defendant intentionally or recklessly, through conduct that is extreme and outrageous, causes severe emotional distress to a plaintiff. *Moses v. Prudential Ins. Co.,* 187 Ga.App. 222, 224–25, 369 S.E.2d 541 (1988). Conduct is extreme and outrageous and sufficient to support a claim for intentional infliction of emotional distress if "the citation of the facts to an average member of the community would arouse his resentment against the actor, and leave him to exclaim 'outrageous!'" *Yarbray v. Southern Bell Tel. and Tel. Co.,* 261 Ga. 703, 706, 409 S.E.2d 835 (1991) (citing Restatement (2d) of Torts § 461(1) (1965)).

Due to the "justifiable concern" that "causes of action grounded upon emotional distress may give rise to fictitious, inflated or trivial claims unless properly circumscribed," the Georgia courts require that the conduct be "of such serious import as to naturally give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress." *Moses,* 187 Ga.App. at 224–225, 369 S.E.2d 541. Moreover, it is a question of law

"[w]hether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress." *Yarbray,* 261 Ga. at 706, 409 S.E.2d 835.

Plaintiffs have provided no evidence that they suffered emotional distress that rises to this level of severity—"so severe that no reasonable man could be expected to endure it." Plaintiffs have provided no evidence indicating that they were humiliated, embarrassed, frightened or outraged by defendants alleged conduct in this case. *See Moses,* 187 Ga.App. at 224–25, 369 S.E.2d 541 (declaring that defendant's conduct to sustain intentional infliction of emotional claim must have been "so abusive or obscene as naturally to humiliate, embarrass, frighten, or extremely outrage the plaintiff."). Accordingly, this Court grants defendants' motions for summary judgment on plaintiffs' claims of intentional infliction of emotional distress.

### CONCLUSION

Accordingly, Defendant King's Motion for Summary Judgment [49] is **GRANTED in part and DENIED in part.** Defendants Ashford, Burke, C. Mills, D. Mills' Motion for Summary Judgment [55] is **GRANTED in part and DENIED in part.** Defendant Jones' Motion for Summary Judgment [75] is **GRANTED in part and DENIED in part.**

The following claims remain to be tried in this case. Plaintiff Ruble has an Eighth Amendment claim against defendants King, D. Mills, Ashford, Burke, Jones and C. Mills in their individual capacities. Plaintiff Anderson has an Eighth Amendment claim against defendants King, D. Mills, Burke, Jones and C. Mills in their individual capacities. Plaintiffs Anderson and Ruble have state law claims of assault and battery against defendants King, Ashford, Burke, Jones, and C. Mills in their individual capacities.

SO ORDERED.