Ronnie McCLENDON, Plaintiff,

v.

Tony MAY, Joseph Martin, and
Effingham County,
Defendants.

Civil Action No. CV498–205.

United States District Court,
S.D. Georgia,
Savannah Division.

Feb. 3, 1999.

Abda Lee Quillian, Savannah, GA, for plaintiff.

Thurbert E. Baker, Kathleen M. Pacious, John C. Jones, Atlanta, GA, Terry L. Readdick, G. Todd Carter, Brunswick, GA, for defendant.

## ORDER

MOORE, District Judge.

## I. INTRODUCTION

Defendants May and Martin have moved to dismiss Plaintiff McClendon's complaint on several grounds. Similarly, Defendant Effingham County has filed a Motion for Judgment on the Pleadings. McClendon has responded to both motions.

McClendon's complaint advances the following five counts: (1) Assistant District Attorney May is liable for damages to McClendon under 42 U.S.C. § 1983 because he allegedly violated McClendon's Fifth and Sixth Amendment Rights; (2) District Attorney Martin is liable for damages to McClendon under 42 U.S.C. § 1983 because he allegedly violated McClendon's Fifth and Sixth Amendment Rights; (3) Effingham County is liable for damages to McClendon under 42 U.S.C. § 1983 because the policies, practices, and customs of the county caused the alleged violations of McClendon's constitutional rights; (4) May and Martin are liable for damages to McClendon under 42 U.S.C. § 1985 be-

cause they allegedly conspired with each other to violate McClendon's constitutional rights; and (5) May, Martin, and Effingham County are liable to McClendon for attorney's fees under 42 U.S.C. § 1988.

In response to these allegations, May and Martin argue that the complaint should be dismissed. They argue (1) that May and Martin are immune from suit in their official capacities under the Eleventh Amendment because they are state, rather than county, officials; (2) that May and Martin are absolutely immune from suit by virtue of the doctrine of prosecutorial immunity; (3) that May and Martin are entitled to qualified immunity; and (4) that all contentions older than September 8, 1996 are barred by the applicable statute of limitations.[1]

In its Motion for Judgment on the Pleadings, Defendant Effingham County argues that Assistant District Attorney May and District Attorney Martin are state officials. Effingham County contends that because they are state officials, they could not set policy for the County. Accordingly, Effingham County asserts that it cannot be held liable.

On December 15, 1998, the Court ordered McClendon, May, and Martin to respond to two questions.[2] Those parties have responded and the Court has carefully taken those submissions into consideration in reaching its decision on the present motions.

McClendon has filed a Response to Defendant May's and Martin's Motion to Dismiss and argues that none of the grounds they advance is sufficient to dismiss the complaint. Similarly, he opposes Effingham County's motion and relies upon his previously filed Response to May's and Martin's motion. For the reasons that follow, the Motion to Dismiss and the Motion for Judgment on the Pleadings are **GRANTED.**

## II. BACKGROUND

The following recitation of fact is based entirely on Plaintiff's complaint.

McClendon's complaint focuses on the events surrounding the Effingham County Grand Jury investigation of the death of Steven Wayne McClendon, who died of a gunshot wound on October 14, 1990. In the years following Steven McClendon's death, Plaintiff McClendon was indicted several times for murdering Steven McClendon.

On March 18, 1991, an Effingham County Grand Jury heard evidence relating to the death of Steven McClendon. However, the official minutes of the grand jury session do not reflect the action taken by the grand jury, nor is there any true, official record of its presentments. During the March 1991 presentment, members of the victim's family were present throughout the proceeding and discussed the incident with the grand jurors even though they were not sworn as witnesses.

On June 4, 1991, another grand jury heard evidence surrounding the death. Members of the victim's family were also present during this grand jury session. The grand jury returned a true bill charging McClendon and others with murder. This indictment was later nolle prossed.

On September 2, 1991, another grand jury heard evidence surrounding the death. The grand jury returned a no bill on the charge of murder.

Just over five years later, the Effingham County Grand Jury again heard evidence relating to the death of Steven McClendon. On September 13, 1996, evidence was pre-

---

1. Given its decision on the first three grounds, the Court finds it unnecessary to examine whether the statute of limitations bars all contentions older than September 8, 1996.

2. In that Order, the Court ordered the parties to supplement their arguments with additional briefs. The parties were instructed to answer the following questions and provide legal support for their conclusions: (1) whether the District Attorney and Assistant District Attorney are state or county officials; and (2) how May and Martin have specifically violated McClendon's Fifth and Sixth Amendment rights.

sented to the grand jury and it returned a true bill charging McClendon with murder. Allegedly, the witnesses who testified during this presentment did so in each other's presence. Moreover, Defendant May, the assistant district attorney, was present during the grand jury's deliberations and voting and stated something similar to "let's indict it and let the Court work it out." He apparently also said something like, "this is a case that probably needs to try at some point," and may have actually asked for a true bill. Plaintiff filed a Plea in Abatement/Motion to Dismiss Indictment in response to this conduct and the conduct of the earlier grand juries.

However, before a hearing was conducted on McClendon's Motion, the Ogeechee Judicial Circuit issued a Standing Order Regarding Grand Juries. This October 23, 1996 Order recognized that within the Ogeechee Circuit the district attorney and assistant district attorneys often remained "in the presence of grand juries during deliberations and the finding of true bills and no bills." The Order mandated that the district attorney and his assistants immediately cease that practice. The Order stated, "They shall remain separate and apart and outside the sight or hearing of each grand jury while that body is deliberating, voting, or deciding on any other action concerning any indictment." Shortly after the Order was issued, McClendon's September 13, 1996 indictment was nolle prossed.

In December 1996, the grand jury was again presented with evidence, and it returned an indictment charging McClendon with murder. In response, McClendon again filed a Motion to Dismiss/Plea in Abatement and on May 12, 1997 the Superior Court of Effingham County granted that Motion.

Before the present action was instituted, the Attorney General for the State of Georgia issued Unofficial Opinion U97–3 on January 17, 1997. That opinion was an apparent response to an inquiry from a Senator in District 2 concerning whether or not the district attorney or members of the district attorney's staff should be present during grand jury deliberations. The opinion states that because the Georgia Code calls for the secrecy of the proceedings of the grand jury, "in the interest of secrecy, neither the district attorney nor the district attorney's staff should remain present during any deliberations." The opinion fails to address the interest of *fairness* to the defendant.

Finally, on September 8, 1998, McClendon filed this action seeking money damages for the injuries he allegedly suffered during this tortured course of grand jury proceedings.

## III. ANALYSIS

### A. Standard of Review.

Defendants May and Martin petition the Court to dismiss Plaintiff's complaint for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). Defendant Effingham County has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Like May and Martin, Effingham County contends that it is entitled to judgment as a matter of law because McClendon's complaint fails to state a claim upon which relief may be granted.

"In evaluating the sufficiency of a complaint, a court 'must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff.'" *Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir.1998) (quoting *St. Joseph's Hosp., Inc., v. Hospital Corp. of America*, 795 F.2d 948, 954 (11th Cir.1986)). "Before this Court can dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), it must conclude that the plaintiff can prove no set of facts in support of the claim that would entitle it to relief." *St. Joseph's Hosp., Inc. v. Hospital Authority of America*, 620 F.Supp. 814, 820 (S.D.Ga.1985), *vacated on other grounds*, *St. Joseph's Hosp., Inc., v. Hospital Corp. of America*, 795 F.2d 948 (11th Cir.1986). As a consequence of this exact-

ing standard, "a defendant thus bears the 'very high burden' of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief." *Beck,* 144 F.3d at 735.

## B. Eleventh Amendment Immunity.

■ In their Motion to Dismiss, Martin and May argue that McClendon's claims against them in their official capacities should be dismissed on Eleventh Amendment grounds. The Eleventh Amendment to the United States Constitution provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. Const. Am. XI. The Amendment also applies to suits in federal court against a state by its own citizens. *See Hans v. Louisiana,* 134 U.S. 1, 18–19, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The protection provided to states by the Amendment has been extended to protect state entities, *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("suit in which the State or one of its agencies or departments is named as defendant is proscribed by the Eleventh Amendment ... regardless of the relief sought,") and state officials in their official capacities, *See Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Essentially, the Eleventh Amendment creates a sovereign immunity from suit in federal court which the states enjoy unless it has been surrendered. *See Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 266–67, 117 S.Ct. 2028, 2033, 138 L.Ed.2d 438 (1997).

■ There are three ways that a state may surrender Eleventh Amendment sovereign immunity. The state may affirmatively waive its 11th Amendment protection. *See Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *Fouche v. Jekyll Island–State Park Authority,* 713 F.2d 1518, 1522 (11th Cir.1983) (stating that

waiver will only be found where state has made it completely clear). Second, Congress may abrogate a state's sovereign immunity under a particular statute. *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55–73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Finally, the Supreme Court has recognized an exception which allows a suit against a state official in his official capacity for prospective injunctive relief to end a continuing violation of federal law. *See Ex Parte Young,* 209 U.S. 123, 155–56, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

■ The two critical issues in this case concerning the Eleventh Amendment are whether any of the three exceptions to state sovereign immunity apply and whether Martin and May are considered state officials or county officials. As for the first issue, McClendon does not contest the contention of Martin and May that none of the three exceptions to sovereign immunity apply. Indeed, Defendants are correct in their contention. The state of Georgia has not affirmatively waived its immunity in section 1983 and section 1985 cases. Georgia Constitution, Art. 1, § 2, ¶ 9(f) (1997). Congress did not abrogate state sovereign immunity when it passed section 1983 or section 1985. *Quern v. Jordan,* 440 U.S. 332, 350, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Finally, McClendon is not seeking prospective injunctive relief, so his action is not within the *Ex Parte Young* exception.

■ As to the second issue, "the determination of whether 'an official acts on behalf of the county or the state is ... a question of state law.' " *Owens v. Fulton County,* 877 F.2d 947, 950 (11th Cir.1989). In *Owens,* the Eleventh Circuit affirmed the District Court's decision which held that a Georgia district attorney is a state official, at least when he is "exercising his discretion in prosecutorial decisions." *Owens,* 877 F.2d at 951. Thus, to the degree that McClendon seeks to hold Martin and May liable in their official capacities for acts within the realm of their prosecutorial discretion, they are considered state offi-

cials cloaked in Eleventh Amendment Immunity. *Cf. Abiff v. Slaton,* 806 F.Supp. 993 (N.D.Ga.1992), *aff'd,* 3 F.3d 443 (11th Cir.1993) (holding that district attorney and assistant district attorney enjoyed official capacity Eleventh Amendment immunity from section 1983 claim without examining conduct for which they faced suit.)

It is clear from both the District Court and Eleventh Circuit decisions in *Owens* that under Georgia law, a district attorney generally is considered to act on behalf of the state, rather than to set policy for a particular county. The Eleventh Circuit relied upon several factors when it affirmed the District Court in that case. First, "Georgia's District Attorneys are paid by state funds, although the county or counties within the district attorney's judicial circuit may supplement their salaries." *Owens,* 877 F.2d at 951; O.C.G.A. 15–18–10(a), (b) (1997). Second, each district attorney serves within a particular judicial district, and many of these districts consist of more than one county. *Owens,* 877 F.2d at 951. For example, the Ogeechee Judicial Circuit, where district attorney Martin serves, is composed of Bulloch, Effingham, Jenkins, and Screven counties. O.C.G.A. 15–6–1 (1994). Third, "the State of Georgia exercises its prosecutorial powers through its attorney general ... [rather than] in its counties." *Id.;* O.C.G.A. 15–18–7 (1994).

In addition to the factors that the Eleventh Circuit noted, the District Court in *Owens* also relied upon other considerations which tended to show that a district attorney is a state official in Georgia. The District Court for the Northern District of Georgia stated:

> The district attorney's state attributes, in addition to receiving a salary from the state and representing judicial circuits that more often than not include more than one county, include prosecuting the state's interests in Superior Court; collecting money due the state and reporting to the state revenue commissioner; receiving reimbursement for expenses from the state in the same manner as other state officials; and as noted above,

sharing prosecutorial authority with the State Attorney General.

*Owens,* 690 F.Supp. at 1027. The culmination of all these factors clearly leads this Court to the conclusion that for all his acts undertaken within the realm of his prosecutorial role, district attorney Martin acted as a state official. As such, he is entitled to Eleventh Amendment immunity on his official capacity claims for his conduct before the grand jury.

■ While the Eleventh Amendment shields Martin's acts before the grand jury, McClendon contends that he can still be liable as a county official for his failure to train claim. He argues that the Eleventh Circuit has recognized that "elected officials who otherwise might be considered solely state officials at times may function in an administrative capacity and be the final authority for the County. This has been particularly true with regard to administrative issues and employment decisions." Pl. Res. to Court Order, p. 1. In other words, assuming that Martin should be treated as a state official for his conduct before the grand jury, McClendon argues that Martin should be treated as a county official for his failure to train his subordinate May that it was improper to remain in the presence of a deliberating grand jury. McClendon cites three cases in support of his contention that a Georgia district attorney may nevertheless be treated as a county official for failing to train his subordinates properly.

First, McClendon argues that the Eleventh Circuit recognized this theory of liability in *Owens.* In that decision the Eleventh Circuit stated "If, for example, Owens' grievance had involved an employment termination by the district attorney, which is an administrative function, such an act might be characterized as an exercise of county power." *Owens,* 877 F.2d at 952.

Second, McClendon cites *Lucas v. O'Loughlin,* 831 F.2d 232 (11th Cir.1987) in support of his contention, yet he makes no substantive argument of how this case supports his position. Indeed, *O'Loughlin*

provides no support for McClendon's argument. In that case, the Eleventh Circuit held that St. Johns County, Florida could be held liable for the allegedly unconstitutional termination decision of the St. Johns County Sheriff. *O'Loughlin,* 831 F.2d at 235. The *O'Loughlin* case clearly is distinguished because under Florida law, the sheriff served for a particular county and his salary was paid by local taxes and according to a budget approved by local county commissioners. For these reasons, his acts may be imputed to his county in certain situations. In Georgia, however, the district attorney serves a judicial circuit and is paid from state funds which are approved by the state legislature. Thus, the decision in *O'Loughlin* rested upon points where Florida law greatly diverges from Georgia law and is of little help to McClendon here.

Finally, McClendon cites *Parker v. Williams,* 862 F.2d 1471 (11th Cir.1989) because in that case "the sheriff was a County official in his capacity to hire, fire, and train employees." Like *O'Loughlin,* that case is clearly distinguishable because it rests on Alabama state law. More importantly, McClendon fails to mention that *Parker* was overruled by the Eleventh Circuit in *Turquitt v. Jefferson County,* 137 F.3d 1285, 1290 (11th Cir.1998), *en banc* (holding that "*Parker* is not in accord with controlling § 1983 jurisprudence, and we hereby overrule that decision and any subsequent decisions following it, insofar as they held that Alabama sheriffs in their daily operation of county jails act as policymakers for the county.") For these reasons, *Parker* does not support McClendon's position.

In addition to the fact that *O'Loughlin* and *Parker* are distinguishable, the dicta in *Owens* seems to suggest a very different situation than the one presented in the case sub judice. In *Owens,* the Eleventh Circuit suggested that a district attorney *might* be considered a county official for a grievance involving an employment termination, because such matters were administrative. *Owens,* 877 F.2d at 952. However, there must be some substantial legal connection to the county in order to determine that the district attorney acts for the county in training his subordinates. McClendon has failed to produce a single bit of state law that connects the district attorney to the county in such a manner. Regardless of what the Eleventh Circuit has stated in dicta, McClendon cannot convince this Court that under Georgia law a district attorney acts for the county when he fails to train his subordinates to stay out of grand jury deliberations. Accordingly, for all purposes in this case, Martin is considered a state official.

Defendants May and Martin also contend that assistant district attorney May acted as a state official, rather than on behalf of the county. For this reason, they contend that his official capacity claims should be dismissed. In order to determine whether an assistant district attorney acts as a state or county official when he appears before a grand jury, the Court must again look to Georgia law. *Owens,* 877 F.2d at 950.

Obviously, most of the factors which led the Court to conclude that the district attorney was a state officer also point the Court to the same conclusion for an assistant district attorney. Furthermore, the Court sees no reason why assistant district attorney May should be treated any differently in this case than district attorney Martin. The provisions of the Georgia Code dealing with assistant district attorneys indicate that they too are state officials. State law governs their qualifications and determines their salary. O.C.G.A. § 15–18–14.[3] Therefore, May is considered a state official.

---

3. The Court is aware that one provision of the Georgia Code provides for the appointment of an assistant district attorney, who would be a county employee, to perform the duties delineated under the Child Support Recovery Act, Uniform Reciprocal Enforcement Support Act, and the Uniform Interstate Family Support Act. O.C.G.A. § 15–18–14(b)(2). Plaintiff has not alleged that assistant district attorney May is such an officer, and absolutely nothing in this case gives the Court any suspicion that May was so appointed.

In conclusion, the Eleventh Circuit's decision in *Owens,* Georgia state law, and an examination of the alleged misconduct at issue here demonstrate that Martin and May were acting as state officials rather than county officials. As such they are entitled to Eleventh Amendment immunity from suit in their official capacities. Accordingly, their Motion to Dismiss all claims against them in their official capacity is **GRANTED.**

### C. Prosecutorial Immunity.

Martin and May argue in their Motion to Dismiss that they are completely immune from suit on the basis of absolute prosecutorial immunity. McClendon, on the other hand, contends that prosecutorial immunity does not protect the defendants because when they allegedly violated his rights they were acting beyond the limits of their roles as advocates.

■■■ The doctrine of absolute prosecutorial immunity protects district attorneys and other prosecutors from civil suit for a range of functions they perform as state or federal advocates in criminal matters. *Kalina v. Fletcher,* 522 U.S. 118, ——, 118 S.Ct. 502, 506, 139 L.Ed.2d 471 (1997). "This immunity is derived from the absolute immunity afforded judges and grand jurors who, like prosecutors, are required to perform an integral function in our system of criminal justice." *Nathan v. Lawton,* 1989 WL 11706 (S.D.Ga.1989). While the protection that the doctrine affords is a complete exemption from suit, prosecutorial immunity only extends to acts "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). In other words, a prosecutor is protected for the actions he undertakes as an advocate for the state, but he enjoys no immunity for "those aspects of [his] responsibility that cast him in the role of an administrator or investigative officer." *Imbler,* 424 U.S. at 430, 96 S.Ct. at 995.

In order to determine whether a prosecutor is entitled to absolute immunity, the Court must "examine 'the nature of the function performed, not the identity of the actor who performed it.' " *Kalina,* 522 U.S. at ——, 118 S.Ct. at 508 (quoting *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988)). Thus, "the protection of absolute immunity is contingent on the 'function,' the prosecutors are performing and not their status as prosecutors." *Mastroianni v. Bowers,* 160 F.3d 671, 676 (11th Cir.1998). Because of the frequency and importance of the doctrine in federal civil rights cases, numerous courts have rendered decisions delineating the boundaries of the doctrine and establishing which functions are immunized and which ones are not.

■ In *Kalina,* the United States Supreme Court held that the defendant state prosecuting attorney was immune for "matters [that] involved the exercise of professional judgment." *Kalina,* 522 U.S. at ——–——, 118 S.Ct. at 509–10. In a related context, the Supreme Court held that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993). The Supreme Court also has held, however, that absolute immunity does not protect a prosecutor from suit arising from holding a press conference. *Buckley,* 509 U.S. at 276–78, 113 S.Ct. at 2617–18. Courts have also been unwilling to extend absolute immunity to prosecutors for giving legal advice to the police during their pretrial investigation, *Burns v. Reed,* 500 U.S. 478, 492–96, 111 S.Ct. 1934, 1942–45, 114 L.Ed.2d 547 (1991), or for participating in a police search and "entrapping someone." *Mullinax v. McElhenney,* 817 F.2d 711 (11th Cir.1987). Generally speaking, prosecutors are not immune for their conduct prior to the judicial phase of the criminal process. *Mastroianni,* 160 F.3d at 676.

■■ While the courts have not exempted many of the pretrial actions of prosecu-

tors, they have been unanimous in holding that a prosecutor's conduct before a grand jury is protected by absolute immunity. *See, e.g., Burns,* 500 U.S. at 490, n. 6, 111 S.Ct. at 1941 (listing Federal Courts of Appeals decisions holding "that prosecutors are absolutely immune for their conduct before grand juries.") Prosecutors are protected for these activities because the "presentation of testimony and any other evidence before the indicting grand jury is a prosecutorial activity 'intimately associated with the judicial phase of the criminal process.'" *Lyles v. Sparks,* 79 F.3d 372, 377 (4th Cir.1996); *see also, Celia v. O'Malley,* 918 F.2d 1017, 1019–20 (1st Cir.1990) (holding that because presentation of evidence to a grand jury is at the heart of the criminal justice system, prosecutor is immune for such conduct); *Smith v. Deering,* 880 F.Supp. 816, 823 (S.D.Ga.1994), *aff'd,* 71 F.3d 883 (11th Cir. 1995) (holding prosecutor is immune for presentations to grand jury).

█ Given this precedent, there can be no question that district attorney Martin and assistant district attorney May are entitled to absolute prosecutorial immunity for their conduct before the Effingham County Grand Jury. McClendon argues that "interjecting ones self [sic] into a grand jury's deliberations is in no way the traditional role of an advocate." Br. In Opp. at 3. While remaining in the grand jury room as the grand jurors deliberate and commenting on the action they should take might appear improper, Martin and May still were acting as advocates when they did these things. The propriety of their actions is of no consequence for the prosecutorial immunity analysis. For example, in *Moore v. Valder,* 65 F.3d 189, 194 (D.C.Cir.1995), the Court of Appeals for the District of Columbia held that a prosecutor was absolutely immune from suit "for allegedly concealing exculpatory evidence from the grand jury and for allegedly manipulating evidence before the grand jury to create a false impression." *Id.* Those actions undoubtedly were improper and more egregious than the type

of conduct that McClendon alleges here. Nevertheless, the Court of Appeals still found that the prosecutor's choices involving the presentation of evidence to the grand jury were immune because they were central to his role as an advocate. *Id.* Similarly, while Martin and May might have acted improperly before the grand jury, they were functioning as advocates and their acts are entitled to absolute prosecutorial immunity.

McClendon also charges that Martin and May conspired to violate his rights and that this conspiracy is evidenced by the overt acts they committed before the grand jury. Martin and May contend that prosecutorial immunity also protects them from this allegation. The Court of Appeals for the Eleventh Circuit has held that "the allegation that a challenged official act is part of a conspiracy does not in any manner dilute immunity." *Elder v. Athens–Clarke County,* 54 F.3d 694, 695 (11th Cir.1995). In so holding, the Court of Appeals reasoned that if "calling a judge's allegedly wrong decision a conspiracy does not strip the judge of absolute immunity, calling a prosecutor's allegedly wrongful decision to prosecute a conspiracy does not strip the prosecutor of absolute immunity." *Id.* In the case sub judice, Martin and May are immune for their acts before the grand jury; calling those acts a conspiracy does not dilute immunity. Therefore, they are entitled to absolute immunity for allegedly conspiring to violate McClendon's constitutional rights.

Finally, McClendon also has charged that Martin is liable for failing to train and supervise his subordinates so as to ensure that they would not be present during grand jury deliberations. In his Brief in Opposition, McClendon does little more than state that in his role as a supervisor Martin acted as an administrator and is therefore not entitled to prosecutorial immunity. Similarly, Martin fails to enumerate in his Motion to Dismiss how his supervisory role is functionally that of an advocate. Given the lack of arguments on either side and the procedural posture of this case, the Court assumes for the

sake of argument that by suing Martin for his failings as a supervisor, McClendon is really suing Martin for his administrative functions, rather than his advocacy functions. For this reason, this aspect of the case is more appropriately analyzed under qualified immunity.

### D. Qualified Immunity.

Martin and May also argue that they are entitled to qualified immunity. After analyzing the question of prosecutorial immunity, only the charge that Martin failed to adequately train and supervise his subordinates remains for examination. All other causes of action against these defendants in their individual and official capacities have been dismissed.

The very recent case of *Harbert International v. James,* 157 F.3d 1271 (11th Cir.1998) establishes the current test for qualified immunity in the Eleventh Circuit. First, "the official must prove that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority." *Harbert* 157 F.3d at 1281. Second, "if the official meets that burden, the plaintiff must prove that the official's conduct violated clearly established law." *Id.*

■ The conduct at issue for the qualified immunity analysis here is Martin's alleged failure to train his subordinate of the fact that remaining in the grand jury room violated the law. In other words, in allegedly failing to train his subordinates that remaining in the grand jury room during deliberations is improper, did Martin himself violate a clearly established federal law? McClendon does not contend that Martin's failure to train was an act outside of the scope of his discretionary activities. Indeed, as District Attorney, his authority includes supervising his subordinates. O.C.G.A. § 15–18–14 (1994).

■ Once it has been established that Martin was acting within the realm of his discretion, the burden shifts to McClendon to show that Martin's acts violated clearly established law. In this context:

> For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in defendant's place, that 'what he is doing' violates federal law.

*Lassiter v. Alabama A&M Univ.,* 28 F.3d 1146, 1149–50 (11th Cir.1994) *en banc.* Furthermore, "[i]n this Circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the United States Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins by Hall v. Talladega City Bd. of Educ.,* 115 F.3d 821, 826 n. 4, (11th Cir.), *en banc, cert. denied,* —— U.S. ——, 118 S.Ct. 412, 139 L.Ed.2d 315 (1997). McClendon has cited to no case in his Brief in Opposition or his Response to the Court's Order establishing that failing to train a subordinate assistant district attorney that remaining in the grand jury room during deliberations violates the Fifth or Sixth Amendments to the United States Constitution. Indeed, he cites no case that establishes that actually remaining in the grand jury room during deliberations violates either federal or state law.[4] Instead, McClendon argues that because the handbook given to grand jurors by Martin states that "after the evidence is presented, the prosecuting attorney will leave the room and the grand jury will be given the opportunity to discuss the case in private and vote," Martin knew or should have known that by not training his subordinates that they had to stay out of the

4. In his Response to the Court Order, McClendon does cite several U.S. Supreme Court cases which declare the importance of the grand jury in our form of government. However, McClendon makes no effort to show how these cases establish that any of the conduct complained of in this case violates

the Constitution. In other words, McClendon's claim fails to overcome the strong protection qualified immunity provides because he has pointed to no factually analogous case which establishes that the defendants' conduct was a violation of the Fifth or Sixth Amendments.

grand jury room that he was violating the federal constitution.

While the handbook seems to establish that prosecutors were not supposed to be present during deliberations as a matter of policy, it does not have the force of federal law. In order to meet his burden in demonstrating that Martin is not entitled to qualified immunity, McClendon must point to some "factually analogous case" or other statement of positive law that states that failing to train his assistants in this matter violated the Fifth or Sixth Amendment. *Harbert International*, 157 F.3d at 1285. He has failed to do so.

The Court has researched the issue and has been unable to find a case stating that failing to train one's subordinates that they cannot remain in the grand jury room during deliberations violates the Fifth or Sixth Amendment. Similarly, the Court was unable to find any case law suggesting that a prosecutor violates the Constitution by remaining in the presence of the grand jury during deliberations.[5] Under O.C.G.A. § 15–12–67 (1994), each Grand Juror in the State of Georgia takes an oath to "keep the deliberations of the Grand Jury secret." However, neither party has demonstrated, nor has the Court uncovered, any portion of the Code which states that the prosecutor shall not remain in the grand jury room during deliberations.

On the other hand, it is clear that under federal law, a prosecutor is not permitted to remain during grand jury deliberations. Federal Rule of Criminal Procedure 6(d) states that "no person other than the jurors may be present while the grand jury is deliberating or voting." (1998). If Martin and May were federal prosecutors, their acts would have violated clearly established law, and McClendon would have a better chance of establishing Martin's

individual liability for failing to train his subordinates. However, Martin and May are state officers and the Federal Rules of Criminal Procedure only apply in Federal Courts. Fed.R.Crim.P. 1 (1998). While the intention of the Georgia Legislature may have been similar to the drafters of the Federal Rules of Criminal Procedure, such intention is not clear from the face of the Official Code of Georgia.

Notwithstanding the foregoing analysis, it appears almost inconceivable to the Court that at the end of the Twentieth Century, and after a two hundred year history of a constitutional form of criminal justice, that one could find a prosecutor anywhere in America who thought that it was permissible to have a district attorney and/or an assistant district attorney present in a grand jury room during deliberation. But alas, we seem to have found one in south Georgia. Where have these people been? Has the power of the written word or radio or television accounts of our jurisprudential system not yet made its way into Bulloch, Effingham, Jenkins and Screven Counties? Apparently not. Even though this set of facts seems inconceivable, the Court must still apply the rule of law to this case.

Absent some positive statement of law otherwise, Martin cannot be liable for failing to train his subordinates. Therefore, Martin is entitled to qualified immunity in his personal capacity for failing to train his subordinates that they should not be present during grand jury deliberations. Accordingly, Defendant Martin is immune from suit in his individual capacity for the failure to train claim.

### E. Effingham County is Dismissed from the suit.

Effingham County has moved for judgment on the pleadings on the basis that

---

5. The Georgia Attorney General's Unofficial Opinion U97–3 was authored after the conduct at issue in this case transpired. It mentions no state cases that lead to the conclusion that the prosecutor should not be present during deliberations, but instead reaches that result by implication from a Georgia Code

section (§ 15–12–67) which calls for secrecy. Finally, an unofficial opinion of a state attorney general, even if it had been issued before the conduct occurred, would not constitute clearly established law for qualified immunity purposes. *See Jenkins by Hall*, 115 F.3d at 826 n. 4.

because both May and Martin are state officials, their acts cannot be imputed to the county. As the Court previously determined, both Martin and May are considered state officials for all purposes in the case sub judice. *See Owens,* 877 F.2d at 951. Their actions cannot be imputed to Effingham County. Accordingly, all claims against Effingham County are **DISMISSED.**

## IV. CONCLUSION

Defendants Martin and May have demonstrated that they are entitled to judgment as a matter of law. All claims against these defendants are **DISMISSED** either on the basis of the Eleventh Amendment, prosecutorial immunity, or qualified immunity. Similarly, all claims against Effingham County are **DISMISSED** because Martin and May acted as state, rather than county, officials. Because all defendants have demonstrated that they are entitled to judgment as a matter of law, this **CASE IS DISMISSED.** The Clerk is **ORDERED TO CLOSE THE CASE.**